ROBERT RICHEY vs. AMERICAN AUTOMOBILE
ASSOCIATION, INC., & another.[1]

Suffolk.    March 6, 1980. — June 6, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Emotional Distress.    Actionable Tort.*

In an action for emotional distress resulting from the defendants' termina-
tion of the plaintiff's employment, the judge did not err in granting the
defendants' motion for summary judgment where, on the basis of the
pleadings, answers to interrogatories, depositions, and certain af-
fidavits, the plaintiff failed to make out a case of outrageous conduct
by the defendants. [838-839]

CIVIL ACTION commenced in the Superior Court on Janu-
ary 5, 1978.

The case was heard by *Sullivan*, J., on a motion for sum-
mary judgment.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Richard Cole* for the plaintiff.

*Dennis A. Lalli* for the defendants.

KAPLAN, J.    In *Agis* v. *Howard Johnson Co.*, 371 Mass.
140 (1976), we accepted as part of the tort law of the Com-
monwealth a rule of liability for outrageous conduct causing
severe emotional distress, even though without manifesta-
tion of bodily harm.[2]    We said at the time that "the door to

---

[1] Robert Lundblad.

[2] The cause of action is described thus in Restatement (Second) of Torts
§ 46 (1) (1965): "One who by extreme and outrageous conduct intention-
ally or recklessly causes severe emotional distress to another is subject to li-
ability for such emotional distress, and if bodily harm to the other results
from it, for such bodily harm."    In *George* v. *Jordan Marsh Co.*, 359
Mass. 244 (1971), we had already approved the formula in the somewhat
easier case for liability where bodily harm could be shown.

recovery should be opened but narrowly and with due caution."[3]  Should the present case be allowed to pass through the portal?

The plaintiff Robert Richey, a former employee of the American Automobile Association, Inc., Massachusetts Division, sued that company and Robert Lundblad, a personnel manager, on a number of theories set out in separate counts, of which the only one remaining for consideration is that for the asserted emotional distress.[4]  After answer, the plaintiff put interrogatories to the defendants, to which they furnished replies, and he then examined on oral deposition the defendant Lundblad and a number of other supervisory employees of the defendant company.[5]  On the pleadings, the answers to interrogatories, the depositions, and certain affidavits, the corporate defendant moved for summary judgment in its favor.[6]  No additional material was offered on the part of the plaintiff.  A judge of the Superior Court, treating the motion as made by both defendants, allowed it, and judgment entered for the defendants dismissing the complaint.  The plaintiff appeals.

There can be little dispute about the basic facts as they emerged largely under questioning by the plaintiff on the oral depositions.  On August 15, 1974, the plaintiff began employment as a "junior service counselor" in the emergency road service department of the Massachusetts Division at a salary of $4,992 a year.  The duties of a service counselor might comprise any of the functions of receiving telephone

[3] Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976), quoting from Barnett v. Collection Serv. Co., 214 Iowa 1303, 1312 (1932).

[4] There were three counts purporting to be based on statute, but they were without merit and are no longer relied on.

[5] The manager of the emergency road service department, the manager of the accounting and data processing department, and the general manager of the Division.

[6] The motion was for judgment on the pleadings but, as the interrogatories and depositions and other material were received and considered, it was treated as a motion for summary judgment.  Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).

calls from motorists requiring service, relaying the information to a "spotter," acting as spotter in locating the appropriate stations to send aid to the particular motorists and relaying to a "dispatcher," and acting as dispatcher in communicating with the stations by telephone or radio.

There was a six-month probationary period for new employees, with a preliminary evaluation at the end of the third month. About November 14, 1974, the plaintiff's performance was reviewed and evidently considered adequate. Sometime in November, the plaintiff was absent from work for a period of four days as a result of his physical collapse while he was on the way to work. Also that month the plaintiff absented himself from the job for several days because of the death of a parent. He did not notify the employer that he would not appear.

Again the plaintiff was absent on December 4 and thereafter, again without notification. The defendant Lundblad wrote to the plaintiff on December 9, stating that it would be assumed he was quitting voluntarily if he did not get in touch with the office by December 12. As it happened, this letter bears the same date as a formal letter from the general manager of the Division informing the plaintiff that his salary had been raised to $5,252, roughly a 5½ % increase (for "standard performance," as distinguished from "above-standard performance" which warranted an increase of 7-9%, and "outstanding performance," 10-12%).

The plaintiff's mother intercepted Lundblad's letter of December 9 and called Kenneth F. McLaughlin, manager of the emergency road service department, to explain that the plaintiff was in a veterans' hospital taking treatment for a blood problem.[7] Asked why the plaintiff had not called in, the mother said he would act that way when things built up, when he got tense. On December 17 the plaintiff called Lundblad confirming that he was in the hospital and mentioning as the reasons for his hospitalization (which appar-

---

[7] Such a problem was noted when the plaintiff applied originally for the job.

ently was voluntary) the blood condition and "nerves" or anxiety reaction. There was some discussion whether an arrangement could be made to have the plaintiff work part time. Lundblad pointed out the difficulties. He told the plaintiff (confirmed by letter) that he would want information from the doctor at the hospital. On January 2, 1975, the plaintiff hand delivered to Lundblad a doctor's letter dated December 31, and Lundblad spoke with the plaintiff and asked him to get another note with more medical information. On January 10 the plaintiff appeared with a further letter. The substance of the doctor's communication apparently was that the plaintiff could return to full-time work.

About January 10 — more than a month having now elapsed since the plaintiff was last at work — McLaughlin consulted with Lundblad and probably an assistant manager of the emergency road service department, and a decision was reached to terminate the plaintiff's probationary employment. Lundblad telephoned the plaintiff on January 13 and reported the decision. The plaintiff expressed disappointment.

The answers of the supervisory employees to questions about their reasons for terminating the plaintiff summed up as a judgment by them that the plaintiff was not a good risk for long-term employment because of his lapses in attendance and failures to notify the office, and also (at least in Lundblad's mind) because of a doubt about his ability to withstand the strain of a job in the emergency road service department.

In reviewing the correctness of the judge's decision to grant summary judgment for the defendants, we must consider whether a trier, whether jury or judge, could find with reason what is required for liability in cases of this type — that the supervisors' conduct toward the plaintiff was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, Comment d

(1965). See *Agis, supra* at 145; *Boyle* v. *Wenk*, 378 Mass. 592, 594-595 (1979).[8] A trier would be entitled to put as harsh a face on the actions of the supervisors as the basic facts would reasonably allow. A trier could infer, despite the supervisors' attempts at self-justification, that in dismissing the plaintiff they made a bad, unjust, and unkind decision, and one that fell with particular force on the plaintiff because he believed his continued employment to be assured if he brought in the doctor's letters pronouncing him fit to work full time. Further, a trier could suppose (despite the letters) that the plaintiff was tightly strung at the time, and would therefore be disturbed by a disappointment, and that the supervisors were conscious of the likelihood.

But even if the record could reasonably bear all these implications (which, to be frank, we doubt), we think the plaintiff still failed to make out a plausible case of "outrage." The case did not approach the abuse of ordinary decencies to be found in *George* v. *Jordan Marsh Co.*, 359 Mass. 244 (1971) (extreme dunning tactics), *Agis* (public humiliation), or *Wenk* (persistent misbehavior by investigator). Comparison is invited with the cases collected in Annot., Liability of Employer, Supervisor, or Manager for Intentionally or Recklessly Causing Employee Emotional Distress, 86 A.L.R. 3d 454 (1978). There may, indeed, be room for the observation that if the present facts should be held to qualify a discharged employee for relief, then a new practical definition might have to be given to employments theoretically terminable at will. See Glendon & Lev, Changes in the Bonding of the Employment Relationship: An Essay on the New Property, 20 B.C.L. Rev. 457, 472 & n.77 (1979). The considerations which led to a qualification of that relationship in *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977), are not pressed, nor would they be remotely applicable in the circumstances of the discharge of this probationary employee. Cf. Note, 93 Harv. L. Rev. 1816 (1980).

*Judgment affirmed.*

---

[8] It is a further condition of the tort that the defendant shall have acted intentionally or recklessly. See note 2 above and Restatement § 46, Comment i.