**Vance S. LEITHEAD, Appellant (Plaintiff),**

v.

**AMERICAN COLLOID COMPANY, a Delaware corporation, and Myron Durtsche, Jr., Appellees (Defendants).**

No. 85–199.

Supreme Court of Wyoming.

June 24, 1986.

Michael K. Davis of Redle, Yonkee & Arney, Sheridan, for appellant.

Robert M. Shively of Murane & Bostwick, Casper, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

After he was discharged from his job, appellant Vance Leithead sued his former employer, American Colloid Company, and his former supervisor, Myron Durtsche, Jr., alleging breach of contract, breach of the covenant of good faith, slander, misrepresentation of employment, promissory estoppel, tortious interference with contract, and intentional infliction of emotional distress. The district court granted summary judgment in favor of the employer on all the claims except slander, which the parties then settled. We must decide whether the court properly granted summary judgment.

## FACTS

In June of 1978, appellant telephoned Myron Durtsche about a job opening at American Colloid's Lovell plant. The company mines and processes bentonite, a clay that is used in the oil industry. In their initial conversation, Mr. Durtsche offered appellant the job and invited him to start the following Monday. On his first day of work, appellant was given a handbook entitled "For the New Employee of American Colloid Company." Under the heading, "Employment Policies and Objectives," the following statements appeared:

"*Probation*

"All new employees are automatically on a probationary period at the beginning of their employment. During this period, their abilities and work performance are closely evaluated by their supervisor. If for any reason, on or before the end of this period, it is determined that an employee is not suited for the job for which he was hired, his employment may be terminated. At the completion of the probationary period, you will become a permanent employee."

"*Absence from Work*

\* \* \* \* \* \*

"If you are absent for three days, and do not report to your supervisor, it is possible that your employment will be considered as automatically terminated.

"If you are chronically absent, or late in arriving to work, you will seriously jeop-ardize your employment. Please do not let this happen."

"*Our Rules of Conduct*

\* \* \* \* \* \*

"Of course, it is impossible to list every possible type of misconduct which may result in a disciplinary action. If you will act as a reasonable, law-abiding citizen, and do your job well, you will get along all right and enjoy your membership in the family of American Colloid's employees."

"*Termination of Employment*

"Employees wishing to terminate their services should give a minimum of two weeks' notice to their supervisors in order to leave in good standing.

"If you are dismissed, and we certainly hope this never happens, a full explanation for the reasons given to you by your supervisor will be provided."

Sometime in 1982, a new loose-leaf personnel policy handbook entitled "Employee Information Handbook" was given to appellant. It contained essentially identical rules regarding the probationary period, conduct, absences, and termination.

Appellant changed jobs within the company several times between 1978 and his termination on June 29, 1983. In his capacity as a driller and surveyor, appellant had access to confidential information about the location of potential bentonite claims. It was important to the company that this information stay confidential and, to that end, Mr. Durtsche requested, in 1981, that the employees under his supervision sign a secrecy agreement which stated in part:

"[The employee] agrees that either during or after termination of his employment he will not disclose to any person, firm or corporation any information concerning such matters as have been disclosed to him as confidential or treated by Company as confidential during his employment with Company."

Until May of 1983, Mr. Durtsche had considered appellant to be an excellent employee. But his opinion began to change

when he became suspicious that appellant was leaking confidential information to American Colloid's competitors. According to Mr. Durtsche, appellant was the only one who could have been responsible for the leaks. But in his affidavit attached to the motion opposing summary judgment, appellant denied leaking any information to competitors. Mr. Durtsche also had become disgruntled with appellant because of poor work performance in the summer of 1982 and a change in appellant's attitude reported by appellant's immediate supervisor, Ned Walker.

On June 29, 1983, Mr. Durtsche called appellant into his office and fired him. Mr. Durtsche told him that he did not fit into the company's long-range plan but did not accuse him of leaking information. Appellant later learned the reasons for his discharge from fellow employees who attended a safety meeting at the American Colloid Plant several months after the firing. According to Art Schatz, one of those employees, Mr. Durtsche told them:

> "Most of you know now that I have fired Vance Leithead. Some son-of-a-bitch is talking too much. I think we have got him now, but if I did not get the right one, I will fire every damn one of you in here until I get the right one. Even if I have to run this whole field department by myself. I don't know who the mole is or what he is gaining by running to our competitors and telling them everything we are doing."

In October of 1983, appellant filed a complaint against appellees American Colloid Company and Myron Durtsche alleging slander, breach of contract, and malicious conspiracy and interference with employment. On June 19, 1984, the appellees moved for partial summary judgment on the breach of contract claim, and after a hearing, the court granted the motion. The court held that the employment contract was at will, so appellant could be discharged at any time for any reason.

With the court's permission, appellant filed an amended complaint on July 3, 1984, in which he added claims for breach of the covenant of good faith, intentional infliction of emotional distress, misrepresentation of permanent employment, and promissory estoppel. Appellees then filed a second motion for summary judgment on May 15, 1985. After a hearing, the court granted the motion on all claims except the claim for slander which the parties eventually settled.[1]

## INTERPRETATION OF THE CONTRACT

Without the handbooks, the contract was at will, which meant that the employer could discharge appellant without cause. *Alexander v. Phillips Oil Company,* Wyo., 707 P.2d 1385, 1386 (1985). The district court held that the two handbooks did not become part of appellant's employment contract, because they were not supported by consideration running from appellant to the company. The court quoted the following from 53 Am.Jur.2d Master & Servant § 32, at 107:

> "It is the general rule that a contract to give a person permanent employment, in the absence of some further express or implied stipulation as to the duration of the employment or of a good consideration in addition to the services contracted to be rendered, is no more than an indefinite general hiring terminable at the will of either party."

 The rule of additional consideration relied on by the district court is directly contrary to established Wyoming authority. A handbook may change the employer's unfettered right to discharge an employee even if the handbook is given to the employee after his employment has begun. The benefits extended to the employee in the handbook are enforceable contract terms, because they are supported by consideration flowing to the employer. That consideration consists of the benefit of an

---

1. We will detail the court's holdings on each of the claims in appellant's amended complaint except tortious interference with contract and misrepresentation of permanent employment. He has not discussed those two claims on appeal.

orderly, cooperative and loyal work force. *Mobil Coal Producing, Inc. v. Parks,* Wyo., 704 P.2d 702, 707 (1985). The terms in the handbooks became part of appellant's employment contract.

The mere existence of a handbook or employer's manual will not

"make employment other than at will in all instances. Each case must be considered on its own merits. Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. Normally, the construction and interpretation of a contract is for the court as a matter of law. If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact." (Citations omitted.) *Mobil Coal Producing, Inc. v. Parks,* supra, at 706.

■ Our review of the handbooks convinces us that their terms are clear and unambiguous. Under the heading "Probation," the handbooks describe a probationary period during which an employee may be discharged, if he "is not suited for the job for which he was hired." [2]

Then, the handbooks state:

"At the completion of the probationary period, you will become a permanent employee."

By contrasting the permanent employee with the probationary employee, and by defining the probationary employee as one that can be discharged at will, the handbooks strongly imply that a permanent employee is one that can be discharged only for cause. This use of the term "permanent employee" is not unusual.

"Permanent employment has been defined as employment which continues

'"indefinitely, and until one or the other of the parties wish, *for some good reason,* to sever the relation."' *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917, 924 (1981), quoting from *Lord v. Goldberg,* 81 Cal. 596, 601–602, 22 P. 1126 (1889)." (Emphasis in original.) *Rompf v. John Q. Hammons Hotels, Inc.,* Wyo., 685 P.2d 25, 28 n. 2 (1984).

In other words, a permanent employee is one that can only be fired for cause.

By listing misconduct that could result in discharge, the handbooks imply that cause is required. *Alexander v. Phillips Oil Co.,* supra, 707 P.2d at 1388; *Mobil Coal Producing, Inc., v. Parks,* supra, 704 P.2d at 705. For example, the handbooks state:

"If you are absent for three days, and do not report to your supervisor, it is possible that your employment will be considered automatically terminated.

"If you are chronically absent, or late in arriving to work, you will seriously jeopardize your employment."

Statements in the handbooks under the heading "Termination of Employment" are also revealing. Employees are expressly permitted to terminate their employment but are to give two weeks' notice if they wish to leave in good standing. But, there is no corresponding language expressly reserving the company's right to terminate the employee at any time for any reason. The handbooks merely state,

"If you are dismissed, a full explanation for the reasons given to you by your supervisor will be provided."

We hold that both the specific terms and the general tenor of the handbooks gave appellant an enforceable right to be discharged only for cause.

■ In most appeals from summary judgment, we either affirm the district court or reverse and remand for further proceedings. There are cases, however, in which we reverse and remand with instruc-

2. This vague criterion for discharge probably creates an at-will relationship during the probationary period. See *Richey v. American Auto-* *mobile Association, Inc.,* 380 Mass. 835, 406 N.E.2d 675, 678 (1980).

tions to the district court to enter summary judgment, or partial summary judgment, in favor of the unsuccessful party. This is exactly what occurred in *Alexander v. Phillips Oil Company*, supra, 707 P.2d 1385. There, after determining that the contract was "at will," the district court held that the employer was entitled to summary judgment on the employee's claim for wrongful discharge. On appeal, we held that the employee handbook allowed discharge only for cause. Id. at 1389, n. 4. Our interpretation of the contract was conclusive, and we remanded solely for a determination of whether the employer had cause for the discharge.

It is not clear whether the employee made a cross-motion for partial summary judgment in *Alexander v. Phillips Oil Company*, supra. But, even if no such a motion was made, it was still proper for this court to grant partial summary judgment to the employee on appeal.

"[A] district court may resolve a motion for summary judgment in favor of either party, even though only one has filed such a motion." *Young v. Hawks*, Wyo., 624 P.2d 235, 239 (1981).

Since a district court can grant summary judgment to a nonmoving party, this court, which reviews summary judgment in the same light as the district court, can do the same. *Garner v. Hickman*, Wyo., 709 P.2d 407 (1985).

In the case at bar, appellant has not made a cross-motion for summary judgment. Nevertheless, we reach the same result that we reached in *Alexander v. Phillips Oil Company*, supra. We reverse the district court's grant of summary judgment in favor of the employer and remand with instructions that the district court enter partial summary judgment in favor of appellant on the issue of the contract's basic meaning.

■ The summary judgment materials reveal that there remains a factual dispute as to whether appellant was divulging company secrets, an occurrence which appellant concedes would provide cause for discharge. Further proceedings will be required to determine what is sufficient cause for discharge under the contract and whether appellant was discharged for cause as the contract requires.

## COVENANT OF GOOD FAITH

■ In some jurisdictions, an implied covenant of good faith is imposed on employers when they discharge employees under a contract at will. See *Mobil Oil Producing, Inc. v. Parks*, supra, 704 P.2d at 704, and *Rompf v. John G. Hammons Hotels, Inc.*, supra, 685 P.2d 25, for discussions of the doctrine's status in Wyoming. The covenant has no application here, however, because the parties' contract was not at will.

## PROMISSORY ESTOPPEL

Appellant introduced promissory estoppel as an alternative to his contract argument. In his brief he states:

"The Appellant accordingly urges the court to enforce the expectations of Appellant through the doctrine of promissory estoppel, if the court determines that neither of the other two theories in support of that obligation on the part of American Colloid Company can be sustained."

Because of our holding in favor of appellant on the contract issue, there is no need for us to reach his promissory estoppel argument.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In *Spurlock v. Ely*, Wyo., 707 P.2d 188, 191–193 (1985), we discussed the intentional infliction of emotional distress; but we did not have to decide whether it was a viable independent cause of action in Wyoming because the plaintiff's claim for mental injuries was parasitic to his claim for intentional interference with contract. In this case, however, appellant's claim for mental harm is not parasitic. It is set off as a separate claim for relief and is drafted in terms of its generally accepted elements.

In its decision letter, the district court recognized the uncertain status of the claim, but without deciding whether it was valid, the court held that two of its required elements—outrageous conduct and severe mental distress—were not present. If we were to follow the district court's analytical approach and avoid the outright adoption or rejection of the claim, then other Wyoming district courts and litigants would continue to guess about the claim's status. Moreover, it is hard to see what a court achieves by discussing an element of a claim without acknowledging that the claim is valid. If the claim is legitimate, then the court should say so. If the claim is invalid, then the court should not waste its time analyzing its hypothetical elements.

We recently followed this principle when we adopted the cause of action for strict tort liability. *Ogle v. Caterpillar Tractor Company*, Wyo., 716 P.2d 334 (1986). We stated:

> "[B]efore we can begin our analysis of the pleadings, the statute of limitations, and defenses raised, we must first determine whether the doctrine of strict liability is available to state a claim in Wyoming." Id. at 341.

The highest courts in several other states have followed this procedure when adopting the cause of action for negligent infliction of emotional distress. For example, in the Maryland case of *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 86 A.L.R.3d 441 (1977), an employee with a speech impediment brought an action for intentional infliction of emotional distress against a supervisor who made fun of him. The district court granted summary judgment in favor of the supervisor on grounds that the employee's mental harm was not severe and the intermediate court of appeals affirmed. The Court of Appeals of Maryland also agreed that the severity element was missing from the employee's case, but it did not make that determination until it had decided that the cause of action was valid and that severity was one of its elements. See also *Hubbard v. United Press International, Inc.*, Minn., 330 N.W.2d 428, 438–439, 38 A.L.R.4th 971 (1983). We will follow this same procedure in the case at bar.

■ We recently recognized the tort of negligent infliction of emotional distress, noting that

> "[c]ompensation for emotional distress is not a new concept in Wyoming. We have permitted recovery for emotional harm caused by false imprisonment, *Waters v. Brand*, Wyo., 497 P.2d 875, 877–878 (1972), malicious prosecution, *Cates v. Eddy*, Wyo., 669 P.2d 912, 921 (1983), and work-related stress, *Consolidated Freightways v. Drake*, Wyo., 678 P.2d 874 (1984) * * *." *Gates v. Richardson*, Wyo., 719 P.2d 193, 194 (1986).

If a person can recover damages for negligently inflicted mental harm, then without question he should have a cause of action for intentional harm. See *Sheltra v. Smith*, 136 Vt. 472, 392 A.2d 431, 432–433 (1978).

Parties opposing the cause of action for intentional infliction of emotional distress typically contend that its adoption will flood the courts with fraudulent claims and create potentially unlimited liability for every type of mental disturbance. While these problems are not to be dismissed lightly, they can certainly be solved without rejecting the action entirely. That would be the equivalent of "employing a cannon to kill a flea." *Gates v. Richardson*, supra, 719 P.2d 193, 197, quoting *Nehring v. Russell*, Wyo., 582 P.2d 67, 79 (1978).

Section 46 of the Restatement, Second, Torts (1965), places several limits on the action for intentional infliction of emotional distress. It provides:

> "Outrageous Conduct Causing Severe Emotional Distress
>
> "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Outrageous conduct is defined in comment "d" of the Restatement as conduct which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community. Severe emotional distress is defined in comment "j" as distress which is so severe that no reasonable man could be expected to endure it.

The limits imposed in § 46 of the Restatement, together with the jury's common sense, should prove to be adequate protection against fraudulent or frivolous claims. See *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291, 294–295, 77 A.L. R.3d 436 (1975); *Agis v. Howard Johnson Company*, 371 Mass. 140, 355 N.E.2d 315, 318–319 (1976). It is worth noting also, that frivolous claims can be weeded out at the summary-judgment stage. Comment "h" to § 46 of the Restatement, Second, Torts (1965) states:

"*Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

The tort of intentional infliction of mental distress as described in § 46 of the Restatement can be safely characterized as the general rule in the United States. *Sheltra v. Smith*, supra, 392 A.2d at 432–433; see also *Hubbard v. United Press International, Inc.*, supra, 330 N.W.2d at 438 n. 7.

As of 1977, 37 jurisdictions had recognized the tort. *Harris v. Jones*, supra, 380 A.2d at 613, 86 A.L.R.3d at 447. Only three jurisdictions—Indiana, Kentucky, and Texas—have explicitly rejected it. Annot., 38 A.L.R.4th 998, 1030–1031 (1985). We join the vast majority of states and hold that the tort of intentional infliction of emotional distress, as reflected in § 46 of

the Restatement, Second, Torts, is a valid cause of action in Wyoming.

We note here that there are some wrongful discharge cases in which an action for intentional infliction of emotional harm cannot succeed. First, if the employee's mental distress is caused solely by his discharge and if the discharge was permitted in his contract, then the employer has a complete defense.

"The actor is never liable * * * where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement, Second, Torts § 46, comment "g." See also *M.B.M. Company, Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681, 688 (1980).

Second, in jurisdictions where retaliatory discharge is recognized as a tort action, it is not proper for the employee to also claim intentional infliction of emotional harm. This is because damages for the employee's mental distress may be awarded for the retaliatory discharge. The jury might mistakenly award a double recovery if the court instructs on both torts. *Harless v. First National Bank in Fairmont*, W.Va., 289 S.E.2d 692, 705 (1982). Neither of these qualifications apply in this case.

Appellant contends that summary judgment should not have been granted on his claim for intentional infliction of emotional harm, because there was a genuine issue of material fact as to whether his suffering was severe. We disagree. Comment "j" of § 46 of the Restatement, Second, Torts states:

"*Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is

extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.* The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. * * *

"The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. * * *

"It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." (Emphasis added.)

Based on appellant's affidavit and deposition the district court correctly concluded that appellant's suffering was not severe. Appellant testified in his deposition as follows:

"Q. Mr. Leithead, it has come to my attention that your attorneys on your behalf have at least moved to amend your Complaint to assert additional theories, one of them is intentional infliction of emotional distress, and my question to you is what emotional distress have you suffered as a result of all of this?

"A. The emotions that you go through, especially when unemployed, worrying about how in the world you are ever going to pay your bills when your bills total more than unemployment pays and just, just the constant worry about, and then even yet wondering what your future is going to be like where before you thought you had a future with American

Colloid and then all of a sudden now you don't have a future, so that is a great deal of emotional distress.

"Q. What—Have you sought any psychiatric or psychological help for this distress?

"A. No.

"Q. Do you intend to?

"A. I haven't thought about it.

"Q. Not interrupting your sleep at night, is it now?

"A. Sure it does.

"Q. How often?

"A. I don't know. I don't keep track.

"Q. Once a month?

"A. Probably more often than that.

"Q. Once every two weeks?

"A. I don't know, various times.

"Q. Ok. What other effects has it had, if any?

"A. Worrying about what people are thinking about you. That's a big thing. That's quite emotional."

■ The ordinary person who is fired from his job might worry about his future and his ability to pay his bills. He might also lose sleep over it. But this is the kind of distress with which the ordinary person must be expected to cope. Appellant's allegations of distress are insufficient to create a jury question on the severity issue. We can safely say, as a matter of law, that his distress is not so severe as to be compensable.

The case law from other jurisdictions supports our conclusion. In *Wells v. Thomas*, 569 F.Supp. 426, 434 (E.D.Pa. 1983), for example, a discharged employee claimed that her blood pressure increased and that she suffered humiliation, depression and mental distress as a result of her firing. But, the United States District Court for the Eastern District of Pennsylvania held, as a matter of law, that these distresses were not sufficiently severe to allow recovery. The court granted summary judgment in favor of the employer. Similarly, in *Harris v. Jones*, supra, 380 A.2d at 617, 86 A.L.R.3d at 452–453, the

Court of Appeals of Maryland held that the emotional distress

"manifested by an aggravation of [the employee's] pre-existing nervous condition and a worsening of his speech impediment, was vague and weak at best."

The employee's humiliation

"was not, as a matter of law, so intense as to constitute the 'severe' emotional distress required to recover for the tort of intentional infliction of emotional distress." 380 A.2d at 617, 86 A.L.R.3d at 453.

█ In his affidavit, appellant describes mental distress which is slightly more serious than the distress he alleged in his deposition. He claims that as a result of Mr. Durtsche's accusation regarding the theft of company secrets,

"I have been humiliated. I find the accusation * * * constantly on my mind. It has interfered with my relationships with my family, and my friends. I have found myself unable to sleep on many occasions thinking about the accusation."

But, even if the mental distress described in the affidavit can be characterized as "severe," it should be disregarded for purposes of the motion for summary judgment. The mental distress in the affidavit is not linked to appellant's discharge, but instead to Mr. Durtsche's alleged slander. Appellant's claim for slander has already been settled, so it would be improper for him to receive additional damages for slander under the guise of another cause of action. See *Harless v. First National Bank in Fairmont*, supra, 289 S.E.2d 692.

In conclusion, the district court properly granted summary judgment to appellees Durtsche and American Colloid Company on appellant's claim for intentional infliction of emotional distress. Summary judgment was improper, however, as to the claim for wrongful discharge.

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

THOMAS, Chief Justice, concurring and dissenting.

I agree that the summary judgment in this case which was entered in favor of American Colloid Company must be reversed. I do not agree that the court should go further and require the entry of a summary judgment in favor of Leithead with respect to the proposition that the documents presented in this instance demonstrate an employment other than at will as a matter of law. In this instance the court has encountered one of those situations discussed in *Mobil Coal Producing, Inc. v. Parks*, Wyo., 704 P.2d 702, 706 (1985), in this way:

"This is not to say that the existence of a handbook or employer's manual will make employment other than at will in all instances. Each case must be considered on its own merits. Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. * * * If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact. * * * "

I would treat with the employee handbooks which were introduced into evidence in this case in accordance with the quoted language from *Mobil Coal Producing, Inc. v. Parks*, supra. I would reverse the summary judgment in favor of American Colloid Company, but I would extend the scope of the trial to the factual question of the effect of language in these employee handbooks which I perceive not to be sufficiently apparent to justify a conclusion that this was a contract of employment as a matter of law. In my judgment their effect on at will employment in this instance is a question of fact, but certainly at the very least they are sufficiently ambiguous to require a determination of the intention of the par-

ties from evidence other than the contract itself.