2 F.3d 1160
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bert R. SLAVENS and Kim West, Plaintiffs-Appellants,
v.
BOARD OF COUNTY COMMISSIONERS FOR UNITA COUNTY, WYOMING;
John R. Stevens; S. Clark Anderson; Casey Davis; Paul
Barnard; and Patrick Mulhall, as the present and past
Commissioners of Unita County in their individual and
official capacities, Defendants-Appellees.
 No. 91-8074.
 United States Court of Appeals, Tenth Circuit.
 Aug. 13, 1993.
 
 Before TACHA, SETH and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiffs Bert R. Slavens and Kim West appeal the district court's order granting summary judgment to Defendants-Appellees, the Board of County Commissioners for Unita County, John R. Stevens, S. Clark Anderson, Casey Davis, Paul Barnard and Patrick Mulhall. The district court reasoned that a prior administrative resolution of issues underlying Plaintiffs' claims brought under 42 U.S.C. Sec. 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 626(c), and state law precluded Plaintiffs from relitigating these issues.
 
 
 2
 In 1984, Defendants appointed Slavens Director of Public Works for Unita County, Wyoming. In 1985, Slavens agreed with Defendants to have West transferred from his position as superintendent of the Unita County fairgrounds to the Public Works Department and assigned as a general maintenance worker. Later in 1985, the maintenance and upkeep of fair grounds was transferred from the Fair Board to the Public Works Department. Slavens had West resume some of his former duties at the fair grounds.
 
 
 3
 West began permitting commercial livestock haulers to off load cattle at the fairgrounds for a charge of $1.00 per head of cattle, and West kept the revenues. West informed Slavens of this and indicated that he had done it while he was the fairgrounds superintendent. The written job description for the fairgrounds superintendent permitted this employee to stable horses overnight at the fairgrounds for a fee and keep the revenue.
 
 
 4
 In 1990, Public Works employees reported West's cattle off-loading operation to law enforcement officials. A criminal investigation was initiated which revealed that West was using County property and employees on County time to subsidize his cattle off-loading business. The investigation also revealed that Slavens knew of this practice, yet failed to stop it or report it. On December 31, 1990, criminal charges were filed against West and Slavens.
 
 
 5
 On the same day that the criminal complaint was filed, Defendants notified Plaintiffs that a hearing would be held on January 7, 1991, to consider their dismissal due to the cattle off-loading operation. Plaintiffs were informed that they would have the opportunity to present their own version of events, to have witnesses testify on their behalf, and to legal counsel. Defendants ordered Plaintiffs to immediately vacate their offices and return all County property in their possession. Shortly thereafter, the County Attorney dropped the criminal charges.
 
 
 6
 Despite the fact that the criminal charges were dropped, Defendants formally terminated Slavens' employment effective January 8, 1991. Defendants failed to hold a hearing prior to terminating Slavens, contrary to their indication in the December 31 notice. In a January 9 notice informing Slavens that he was terminated, Defendants also informed Slavens that, as a political appointee, he was exempt from County personnel policies, and, therefore, there would be no review of the decision.
 
 
 7
 On January 17, 1991, Defendants held a hearing to determine whether West should be terminated. At this hearing, evidence was presented that West did not have proper authorization for his cattle off-loading operation and that he had used County employees and equipment for his own pecuniary gain. West presented witnesses on his own behalf to counter this evidence. Defendants, who were the decision makers at the hearing, voted to suspend West without pay for fifteen days, effective January 23.
 
 
 8
 Defendants subsequently agreed to provide Plaintiffs a new hearing. In a letter, dated February 19, 1991, the County Attorney informed Plaintiffs' attorney that the County would afford Plaintiffs a new hearing and Plaintiffs would receive full pay and benefits pending the new hearing. However, the County Attorney also informed Plaintiffs' attorney that, while Slavens would be given the opportunity to clear his name, Defendants had no intention of changing their position concerning the termination of his employment.
 
 
 9
 Plaintiffs did not respond to the County's offer, but rather, on March 21, 1991, Plaintiffs filed the instant action in federal district court. The complaint alleged the following: (1) Defendants breached an agreement requiring them to hold a hearing prior to terminating Slavens employment or suspending West's employment; (2) Defendants adversely affected Plaintiffs' reputations in the community by terminating Slavens' employment and suspending West's employment and allowing the publication of certain allegations regarding their employment which thereby deprived Plaintiffs of a liberty and property interest; (3) Defendants deprived Plaintiffs of a property interest without due process of law by terminating Slavens' employment without a hearing and suspending West's employment without an appropriate hearing; (4) Defendants engaged in outrageous conduct, actionable under Wyoming law in instigating the investigation of West's cattle off-loading operation and in their subsequent actions regarding Plaintiffs' employment; (5) Defendants maliciously prosecuted Plaintiffs in instigating the criminal investigation; (6) Defendants failed to pay Slavens wages for accrued vacation and sick leave within twenty-four hours after the termination of his employment as required under Wyoming law; and (7) Defendants discriminated against Slavens in his employment due to his age in violation of the ADEA. Plaintiffs' complaint sought both compensatory and punitive damages.
 
 
 10
 On March 29, the County notified Plaintiffs that a hearing would be held on April 4. The County's notice to Slavens characterized the hearing as a "name-clearing hearing," while West's hearing was characterized as a disciplinary hearing. Slavens' attorney objected to the hearing claiming that it was not "bona fide," was being offered as "a tactic to buttress the Commissioner's position in pending litigation," and was not timely. Slavens' attorney also requested that, in the event the County would proceed with the hearing, a continuance should be granted to afford Slavens the opportunity to pursue discovery.
 
 
 11
 The County agreed to Plaintiffs' request for a continuance. On May 16, 1991, a meeting was held wherein the parties stipulated that the issues to be determined at the administrative hearing were as follows:
 
 
 12
 (1) Do the Petitioners [Slavens and West] have a property interest in continued employment in Unita County?
 
 
 13
 (2) If the answer to Number 1 is yes:
 
 
 14
 (a) Does Unita County have good cause to terminate the employment of Bert Slavens?
 
 
 15
 (b) Does Unita County have good cause to suspend Kim West from employment?
 
 
 16
 (3) Do the reasons for Unita County's proposed termination of Mr. Slavens and suspension of Mr. West damage the Petitioners' good name and reputation, thus entitling them to a hearing for an opportunity to defend their liberty interest in a good name and reputation?
 
 
 17
 (4) If the answer to No. 3 is in the affirmative, then do the facts support or refute the contention of Unita County as to the reasons for the termination of Mr. Slavens and the suspension of Mr. West?
 
 
 18
 (5) Is the proposed termination of [Slavens'] employment improper because it is based on his age?
 
 
 19
 At this meeting, an administrative hearing was set for July 24, 1991.
 
 
 20
 Despite Plaintiffs' continuing objection and request for an additional continuance, the administrative hearing was held on July 24. The County selected and paid the hearing officer. Plaintiffs' attorney was allowed to voir dire the hearing examiner and did not object to his impartiality.
 
 
 21
 Following the hearing, the hearing officer issued findings of fact and conclusions of law. Specifically, the hearing officer found that Slavens had no property right in continued employment but West did. Nevertheless, the hearing officer found that West's temporary suspension was not a significant enough deprivation to support a liberty interest claim, and West was not deprived of his right to continued employment without due process. As to Plaintiffs' claimed liberty interest in their reputations, the hearing officer found that Defendants had not made any public statement stigmatizing Plaintiffs and that both Plaintiffs had been given an opportunity to clear their names in the administrative hearing. Finally, the hearing officer found that the decision not to rehire Slavens was not motivated by his age. On September 4, Defendants, acting as the Board of County Commissioners, adopted the hearing examiners findings of fact and conclusions of law. Plaintiffs sought judicial review in state court of the administrative hearing findings. On March 16, 1992, the state district court reviewing the administrative hearing officer's decision, affirmed its findings of fact and conclusions of law, holding that the hearing officer's findings were not arbitrary or capricious. Plaintiffs did not appeal this decision any further.
 
 
 22
 Meanwhile, Defendants moved for summary judgment in the present federal court proceeding. On October 29, 1991, the federal district court granted Defendants' motion for summary judgment. Finding no genuine issue of material fact, the district court reasoned that Plaintiffs were precluded from relitigating issues decided at the administrative hearing. Specifically, the district court held that Slavens, as a political appointee and, therefore, an at will employee under Wyoming law, had no property interest in his continued employment. As to Slavens' claim that statements by Defendants Davis and Stevens gave him a property interest in his continued employment, the district court found that there was an absence of evidence to support Slavens' contention. With respect to West, the district court, recognized that West had a property interest in his employment, but held that the January 17 hearing was sufficient to meet due process requirements. As to the claim that Plaintiffs were deprived of a liberty interest by Defendants' publication of false statements concerning Plaintiffs, the district court held that the criminal charges contained false, stigmatizing information. Finally, the district court held that the issue of whether Slavens was discriminated against due to his age was conclusively resolved against Slavens at the administrative hearing. Plaintiffs filed a timely notice of appeal from this order thereby giving us jurisdiction pursuant to 28 U.S.C. Sec. 1291.[1]
 
 
 23
 Plaintiffs recognize that decisions by an administrative agency acting in a judicial capacity may be given preclusive effect in a federal lawsuit to the extent that the state affords such decisions preclusive effect. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 111 S.Ct. 2166, 2169 (1991); University of Tenn. v. Elliott, 478 U.S. 788, 789 (1986). Plaintiffs further recognize that Wyoming allows for administrative decisions to preclude the relitigation of issues if the issues are properly before the administrative agency and the parties had a full and fair opportunity to litigate. See Slavens v. Board of County Commissioners, 854 P.2d 683 (Wyo.1993); Joelson v. City of Casper, 676 P.2d 570, 572 (Wyo.1984); Salt Creek Freightways v. Wyoming Fair Employment Practices Comm'n, 598 P.2d 435, 437 (Wyo.1979). Nonetheless, Plaintiffs argue that the administrative decision of the hearing officer is not entitled to preclusive effect because (1) at the time of the district court's order granting summary judgment to Defendants, an appeal of the administrative hearing officer's decision was pending before the Wyoming district court; (2) the procedures were constitutionally defective as they deprived Plaintiffs of their Seventh Amendment right to a jury trial; (3) issues before the court were not appropriate for administrative action; (4) Plaintiffs were not given a full and fair opportunity to litigate the issues; and (5) state law authorized independent action. Plaintiffs further argue the merits of their claims. We need not address the merits of Plaintiffs' claims because we agree with the district court that Plaintiffs are precluded from relitigating issues decided against them at the administrative hearing.
 
 
 24
 We review an order granting summary judgment de novo, applying the same standard as the district court. Osgood v. State Farm Mut. Auto Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Viewing the evidence in a light most favorable to the non-movant, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 25
 Plaintiffs initially argue that Wyoming does not give preclusive effect to an administrative decision when judicial review of that decision is pending. When the federal district court granted summary judgment to Defendants in the present action, Plaintiffs' appeal of the administrative decision was pending before the state district court. Nonetheless, we do not need to decide whether, under Wyoming law, an administrative decision in which judicial review is pending would be given preclusive effect. The state district court has since affirmed the administrative decision, and Plaintiffs failed to appeal the administrative decision any further, thereby rendering Plaintiffs' argument moot.
 
 
 26
 Plaintiffs' argument that the administrative procedures were constitutionally defective in that they have been denied their Seventh Amendment right to a jury trial is without merit. Specifically, this argument is foreclosed by Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979), wherein the Supreme Court held that if the law of collateral estoppel forecloses a party from relitigating factual issues determined against the party in a prior proceeding in which there was no right to a jury trial, "nothing in the Seventh Amendment dictates a different result." Id. at 337.
 
 
 27
 Plaintiffs next claim that they were not given a full and fair opportunity to litigate their claims. Specifically, Plaintiffs claim that the hearing officer was appointed by Defendants without any input from Plaintiffs, was biased due to his prior representation of employers, and refused Plaintiffs' request for a continuance despite Slavens' ill health. While Plaintiffs initially objected to the hearing, Plaintiffs did appear at the hearing and did not object, after being given the opportunity to voir dire the hearing examiner, as to his impartiality. Other than Plaintiffs' bald assertions, nothing in the record indicates that the hearing examiner was predisposed against Plaintiffs. Moreover, Plaintiffs' claim that the proceeding was unfair because of the denial of an additional continuance is belied by the fact that Plaintiffs were given one continuance of over three months to pursue discovery. Plaintiffs make no contention that their case was somehow prejudiced by the denial of an additional continuance.
 
 
 28
 We have some concern whether the administrative hearing can be considered a full opportunity to litigate with respect to Slavens. Specifically, the hearing was held after the adverse employment decision had already been made, and Slavens was informed before the hearing that Defendants had no intention of changing their decision to terminate his employment. This does not mean, however, that the hearing examiner was predisposed against Slavens. Moreover, despite the fact that Slavens may have known that, regardless of the findings from the administrative hearing, he would not retain his job, Slavens still had an incentive to fully litigate the issues to which the parties stipulated. Slavens requested and received the opportunity to clear his name. More importantly, had the hearing examiner resolved the issues in Slavens' favor, Slavens could have used these findings to preclude Defendants from relitigating these issues in the present federal lawsuit which was pending at the time of the hearing. Thus, we agree with the district court that Defendants met their burden on summary judgment of showing that the administrative hearing afforded Plaintiffs a full and fair opportunity to litigate the issues.
 
 
 29
 Plaintiffs next argue that the issues before the court were not appropriate for administrative action. In order for state administrative fact finding to be given a preclusive effect in a subsequent judicial proceeding, the state agency must not only be acting in a judicial capacity, it must "resolve[ ] disputed issues of fact properly before it...." Elliot, 478 U.S. at 798 (emphasis added). While it does seem strange to us that the issue of whether Plaintiffs were entitled to an administrative hearing was determined at an administrative hearing, Plaintiffs stipulated, at a pre-hearing conference, that this issue could be determined by the hearing examiner. Having stipulated that the issues were properly before the hearing examiner, the Plaintiffs cannot now argue to the contrary.
 
 
 30
 Finally, Plaintiffs' claim that state law authorizes an independent action has been rejected by the Wyoming Supreme Court. Slavens, 854 P.2d at 683. Because we defer to the Wyoming Supreme Court's interpretation of state law, this argument also fails.
 
 
 31
 Having determined that Plaintiffs are precluded from relitigating issues decided against them at the administrative hearing, summary judgment for Defendants with respect to all of Plaintiffs' claims, with one exception, is appropriate. Plaintiffs first claim that Defendants breached an agreement to hold a hearing prior to any adverse employment decision. To the extent this states a valid claim, Plaintiffs suffered no damages because, as the hearing examiner found, Plaintiffs were reimbursed for all wages up until the point of the July 1991 hearing.
 
 
 32
 Plaintiffs next claim that Defendants deprived them of their liberty interest in their reputations by publishing false statements. The hearing officer specifically found that Defendants had made no public statements stigmatizing Plaintiffs' reputations. Because we give this finding preclusive effect, Plaintiffs cannot meet their burden of showing that "the actions complained of resulted in the publication of information which was false and stigmatizing." Dickeson v. Ouarberg, 844 F.2d 1435, 1439 (10th Cir.1988) (citations omitted). Moreover, even if Plaintiffs could establish that Defendants published false and stigmatizing information, the remedy mandated by the due process clause is "an opportunity to refute the charge." Codd v. Velger, 429 U.S. 624, 627 (1977) (quotations omitted). As the hearing examiner found, the July 1991 administrative hearing already afforded Plaintiffs this very remedy.
 
 
 33
 Plaintiffs' third claim is that they were denied procedural due process. With respect to Slavens, the hearing examiner found that he had no property interest in continued employment but rather was an at will employee under state law. Thus, Slavens cannot meet his burden on the procedural due process claim to show "a legitimate claim of entitlement" to continued employment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Dickeson, 844 F.2d at 1437. With respect to West, the hearing examiner found that, while West had a property interest in continued employment, the January 17 hearing afforded him pre-suspension notice and an opportunity to respond. The hearing examiner further found that this was sufficient to provide West with procedural due process, See Richardson v. City of Albuquerque, 857 F.2d 727, 731 (10th Cir.1988), and this finding precludes West from relitigating this issue.
 
 
 34
 Plaintiffs' fourth claim alleged that Defendants were liable under state law for "outrageous misconduct" due to instigating the criminal investigation when they knew or should have known that the Commission had previously authorized the off-loading operation, allowing criminal charges to be filed, terminating Slavens employment and suspending West's employment. Plaintiffs allege that these actions caused Plaintiffs great consternation, pain and mental distress. Our research has failed to disclose any tort under Wyoming law known as "outrageous misconduct." Nevertheless, we view this claim as an inartfully pled intentional infliction of emotional distress cause of action which is recognized in Wyoming. See Leithead v. American Colloid Co., 721 P.2d 1059, 1065 (Wyo.1986).
 
 
 35
 Under Wyoming law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress...." Id. (quoting Restatement 2d, Torts Sec. 46 (1965)). To be actionable, the conduct must go "beyond all possible bounds of decency, [be] regarded as atrocious, and [be] utterly intolerable in a civilized community," and the emotional distress must be "so severe that no reasonable man could be expected to endure it." Id. at 1066. Defendants' conduct is clearly not so outrageous as to give rise to a claim of intentional infliction of emotional distress. The hearing examiner found that Defendants did not have actual knowledge of the cattle off-loading operation and did not consent to the operation. The hearing officer further found that Slavens was terminated due to his approval of West's utilization of County property and personnel for personal financial gain and that West was suspended for these activities. When an employee's mental distress is caused solely by his discharge and the discharge is permissible under the terms of the employment, the employer has a "complete defense" to a claim of intentional infliction of emotional distress. Leithead, 721 P.2d at 1066. Moreover, the hearing examiner specifically found that the criminal investigation was not instigated by Defendants, but by other County personnel. Thus, Plaintiffs' claim of "outrageous misconduct" is without merit, and Defendants are entitled to a judgment as a matter of law.
 
 
 36
 To make out a claim for malicious prosecution, Plaintiffs must prove that the criminal charges were filed at the instance of Defendants and were terminated in Plaintiffs' favor, that Defendants acted maliciously and without probable cause, and that Plaintiffs suffered injury or damages as a result. Toltec Watershed Improvement Dist. v. Johnston, 717 P.2d 808, 811 (Wyo.1986). The hearing examiner found that the criminal charges were filed by the County Attorney after receiving complaints from other County employees. Thus, there is no disputed fact as to whether Defendants instigated the charges, and Defendants are entitled to summary judgment on this claim.
 
 
 37
 As to Slavens claim for age discrimination, the hearing examiner specifically found that Defendants' decision to terminate Slavens' employment was not motivated by his age. Therefore, Slavens is precluded from relitigating this issue, and Defendants are entitled to a judgment as a matter of law.
 
 
 38
 Finally, Slavens also asserts a claim based on Defendants' failure to pay him wages for accrued vacation and sick leave. The hearing examiner never addressed this issue, nor did the district court, holding that it was not raised in the summary judgment motion and need not be addressed. We disagree with the district court's disposition. This is a separate cause of action, and nothing in the findings of the hearing examiner precludes Slavens from litigating this claim. There appears to be a genuine issue of material fact as to whether Slavens was entitled to and received such wages. Therefore, summary judgment for Defendants on this cause of action was improper.
 
 
 39
 The district court's order granting summary judgment to Defendants on Plaintiffs' causes of action for breach of an agreement to hold a hearing, denial of property and/or liberty without due process, outrageous conduct, malicious prosecution, and age discrimination is AFFIRMED. The district court's order granting summary judgment to Defendants on Slavens' claim for wages from accrued vacation and sick leave is REVERSED. The case is REMANDED to the district court for proceedings consistent with this opinion.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 On December 31, 1991, Plaintiffs filed suit in state court raising claims similar to those raised in the present federal lawsuit. On August 19, 1992, the state district court granted Defendants' motion for summary judgment in the state lawsuit, holding that Plaintiffs were precluded from relitigating issues decided at the administrative hearing. Plaintiffs appealed this decision, and, on June 9, 1993, the Wyoming Supreme Court affirmed the state district court's order granting summary judgment to Defendants. See Slavens v. Board of County Commissioners, 854 P.2d 683 (Wyo.1993). Whether the judgment of the Wyoming state courts is res judicata as to the claims in the present federal lawsuit is not before us, and we, therefore, express no opinion on this issue. However, we do recognize that the Wyoming Supreme Court's decision does provide controlling authority on several issues of state law raised in the present federal lawsuit