Don TERRY, Appellant (Plaintiff),

v.

PIONEER PRESS, INC., d/b/a Pioneer of
Jackson Hole; Scott Kerby; and Teresa
Jacobs, Appellees (Defendants).

No. 96–270.

Supreme Court of Wyoming.

Oct. 29, 1997.

Richard J. Mulligan, Jackson, for Appellant (Plaintiff).

William R. Fix, Jackson, for Appellees (Defendants).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Don Terry filed this wrongful termination action against his former employer, Pioneer Press, Inc. (Pioneer), as well as Scott Kerby, vice-president of Pioneer, and Teresa Jacobs, production supervisor (collectively appellees). Terry appeals from the summary judgment granted in favor of appellees. We affirm.

Appellant Terry states the issue for review as:

Did the District Court commit reversible error in awarding summary judgment in favor of the Appellee with regard to Ap-

pellant's claims for breach of implied employment contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, emotional distress and punitive damages?

Appellees articulate four issues:

A. Was appellant an "at-will" employee and subject to discharge at any time for any reason or for no reason at all?

B. Does appellant meet the *Wilder* "special relationship" test?

C. Can the appellant avail himself of promissory estoppel?

D. Are punitive damages appropriate in this case?

## FACTS

Terry was hired by Pioneer on September 7, 1989, as a bindery employee, and within a few months he was promoted to bindery supervisor. Terry was fired in early 1991 for coming to work intoxicated but was rehired approximately one week later. Aside from that one week absence in 1991, Terry worked continuously at Pioneer from September 1989 until his employment was terminated in August 1995.

The circumstances surrounding Terry's termination are not in dispute. On August 31, 1995, the Thursday preceding the Labor Day holiday weekend, Jacobs phoned Terry at home and asked him to return to work to complete a job. Terry told Jacobs that he could not complete the job alone, that no other help was available, and that he would come in on Friday and attempt to complete the job. Jacobs informed Terry that if he did not return that evening, he would be terminated. Shortly thereafter, Jacobs phoned Terry back, told him he was fired and that he could pick up his final paycheck the following day. In their depositions, both Jacobs and Kerby stated that Terry was fired for insubordination.

Terry filed suit for breach of employment contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. The district court granted appellees' summary judgment motion, dismissing all of Terry's claims. Terry appeals the district court's order.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56; *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 216 (Wyo.1994). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decisions on issues of law. *Id.* We look at the record from a viewpoint most favorable to the party opposing the motion, allowing that party all reasonable inferences which may be fairly drawn from the record. *Id.*

## DISCUSSION
### Implied-in-Fact Contract

In Wyoming, employment for an indefinite time is presumed to be a contract for at-will employment which either party can terminate at any time for any or no reason. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1249 (Wyo.1997). The at-will presumption is rebuttable, and we examine, under an objective test, whether the employer has intended, either by words or conduct, to include job security as part of the implied employment contract. *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo.1991).

Terry contends that the Pioneer of Jackson Hole Procedures Manual, considered along with other documents, created an enforceable right to permanent employment such that Terry could only be discharged for cause. When an employer's specific representations in an employee handbook amount to an offer of job security, we will enforce such a promise as an implied contract modification of at-will status. *Brodie v. General Chemical Corp.*, 934 P.2d 1263, 1265 (Wyo. 1997) (citing *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1062–63 (Wyo.1986)). For example, a handbook that lists misconduct that could result in discharge implies that cause is required. *Leithead,* 721 P.2d at 1063. A promise of permanent employment

can also alter the at-will presumption if the employee has supplied additional consideration or if the employment contract contains explicit language stating that the employee can only be terminated for cause. *Wilder*, 868 P.2d at 218. We have reviewed the procedures manual and other documents upon which Terry relies, and we conclude as a matter of law that those materials do not manifest an intent on the part of Pioneer to include job security as part of Terry's implied employment contract.

Pioneer distributed the Pioneer of Jackson Hole Procedures Manual to its workforce at a company meeting held in early 1992. The procedures manual is a document designed "to help everyone in the company perform their duties in a standard way" and to serve "as a reference to various policies within the company, from benefits and personnel issues to the current pricing structure." The majority of the manual is devoted to job descriptions, customer relations, pricing and explanations on how to fill out various forms, such as job tickets and work orders. Section XXII, consisting of three pages, is entitled "Personnel Policies." Subsections 6 and 7, entitled "Reviews" and "Dismissal" respectively, are blank. The manual does not discuss probationary periods or probationary versus permanent employment status.

The procedures manual contains no "for cause" language nor does it list misconduct which will result in termination. Subsection 10 restricts smoking and prohibits drinking on the job, but does not state that an employee will be fired for smoking or drinking. Terry claims the fact that Pioneer once fired him for drinking implies he could only be terminated for cause. Terry's reasoning is faulty in two respects. First and foremost, he was fired for drinking before the handbook (and, thus, any implied "for cause" provision) was even in existence. Second, employment at will encompasses dismissals for cause by permitting termination of employment *for any reason or for no reason.* The fact that Terry was dismissed for cause in 1991 is of no consequence in analyzing whether cause was required for his dismissal in 1995.[1] In short, the handbook has no provisions which negate the presumption of employment at will.

Terry insists that when the procedures manual is read together with certain other documents, job security is implied. The other documents are an enrollment form for Pioneer's 401(k) plan, an employee performance appraisal completed in 1992, and internal personnel and payroll forms used to document employment history and record pay changes.

We have already determined that the procedures manual contains no promises which became part of Terry's employment contract. Nor does the procedures manual incorporate by reference or even mention any of the other documents described above. With the exception of the performance appraisal, the record provides no explanation of when or how Terry obtained copies of the internal personnel forms and payroll documents, and Terry fails to enlighten us as to why these forms should be considered part of his employment contract. He contends that the performance appraisal and his eligibility to participate in the 401(k) plan implied that he was a permanent employee. However, to the extent that any of these extraneous documents tend to show that Pioneer distinguished between permanent and probationary employees, that distinction has no significance without a showing of additional consideration or explicit for cause language in the employment contract. *Wilder*, 868 P.2d at 218. Both are lacking here. Terry's attempt to transform this miscellany into an implied-in-fact promise of job security is without merit.

Terry has failed to rebut the presumption that his employment was at will; and, therefore, the court properly entered summary judgment on his claim for breach of an implied-in-fact contract.

### Promissory Estoppel

■ Promissory estoppel claims must show a clear and definite agreement, proof

---

1. Arguably Terry's 1995 termination was also for cause—insubordination. However, as with the 1991 dismissal, whether or not cause existed is immaterial to the determination of whether cause was required.

that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement, and that the equities support enforcement of the agreement. *Loghry v. Unicover Corp.*, 927 P.2d 706, 710 (Wyo.1996). Application of promissory estoppel in the at-will employment context is not a straightforward proposition, and to date we have not recognized promissory estoppel as another exception to the at-will doctrine. *Loghry*, at 710–11.

■ Terry argues that promissory estoppel should be applied in his case because he reasonably relied on Pioneer's promises that it would follow certain procedures for discipline, termination and performance review, and would require employees to go home early when work was slow. He also contends that he relied on the representations of Chad Budge, Terry's former supervisor at Pioneer, that if he moved to Wyoming he was assured of permanent employment with Pioneer.

■ Even if we were to accept that at-will employment permits application of promissory estoppel, Terry is unable to satisfy the first element of the claim—the existence of a clear and definite agreement. Promissory estoppel is a way to satisfy the consideration element, not a way of supplying a promise. 1 HENRY H. PERRITT, JR., EMPLOYEE DISMISSAL LAW AND PRACTICE § 4.39 (3d ed.1992). As previously discussed, Pioneer's procedures manual and the other documents did not contain promises to terminate for cause or to terminate after following certain procedures. Nor do those materials promise that performance reviews will be conducted. The manual does say "[h]ourly employees must go home when there is no work." Regardless of whether that language constitutes a promise, it does not apply here, where Pioneer has alleged that Terry failed to come in when there *was* work to do. Therefore, the handbook and other documents cannot support Terry's claim.

In his brief, Terry asserts that Chad Budge promised him permanent employment at Pioneer. However, Terry's affidavit states that Budge told Terry he "would have a job at Pioneer of Jackson Hole" if he moved from Idaho, where he was living at the time, and "upon returning to Teton County, Wyo-

ming [he] would have a job in the bindery department at Pioneer of Jackson Hole." The distinction between representing that a person will have "a job," as compared to "a permanent job," is critical and proves fatal to Terry's claim. According to Terry's own summary judgment materials, Pioneer lived up to its promise, which was to hire him in the bindery when he moved to Jackson.

The record in this case, viewed in the light most favorable to Terry, fails to demonstrate a genuine issue of material fact which would preclude summary judgment on his promissory estoppel claim.

### Good Faith and Fair Dealing

■ An implied covenant of good faith and fair dealing is a substitute for an express or implied-in-fact promise by the employer and tests a defendant's compliance with a duty imposed by law rather than with a promise voluntarily made. *Wilder*, 868 P.2d at 221; *see also* 1 PERRITT, *supra*, § 4.9. Wyoming recognizes that the bad motives of an employer may be actionable in limited circumstances under a claim for breach of the implied covenant of good faith and fair dealing. *Loghry*, 927 P.2d at 710. An employee's assertion that he was treated unfairly by his employer is not enough to support a claim for breach of the implied covenant. Only in those rare and exceptional cases in which a special relationship of trust and reliance exists between the employer and employee is a duty created which can give rise to tort liability. *Id.* at 712.

■ Terry claims a special relationship based on his six years of employment with Pioneer. In addition, Terry avers a special relationship between him and Pioneer by virtue of his relationship with Kerby. Prior to his employment at Pioneer, Terry had been Kerby's supervisor and taught him the bindery trade. In 1992, Kerby conducted a performance review of Terry in which Kerby stated Terry was an outstanding employee and an asset to the company. Terry also points to the fact that he was allowed flexibility in his scheduling when other employees were not.

■ Terry misconstrues the nature of special relationship required to create a legal duty on the part of Pioneer. A special relationship of trust and reliance sufficient to support a cause of action for breach of the implied covenant of good faith and fair dealing may be found by the existence of separate consideration, rights created by common law or statute, or rights accruing with longevity of service. *Loghry*, 927 P.2d at 712. A personal relationship between a supervisor and employee is clearly not the type of special relationship contemplated by the tort. Similarly, an outstanding performance review and permission to set flexible work hours do not constitute separate consideration or rights giving rise to a special relationship of trust and reliance.

■ Trust and reliance can be based on the existence of rights accruing with longevity of service. In *Garcia v. Uniwyo Federal Credit Union*, we noted that usually the special relationship giving an employee a cause of action stems from a long term employment relationship coupled with a discharge calculated to avoid employer responsibilities to the employee, for example, payment of benefits or commissions. 920 P.2d 642, 646 (Wyo. 1996); *see also Wilder*, 868 P.2d at 221–22. Terry does not contend that he was discharged so Pioneer would avoid paying him retirement benefits or commissions, nor does he claim any special reliance on extended employment or retirement benefits that would have accrued by virtue of his continued, long-term employment. The fact that Terry was employed by Pioneer for nearly six years, without more, is not sufficient to establish a special relationship. The court properly entered summary judgment on Terry's claim for breach of the implied covenant of good faith and fair dealing.

### Intentional Infliction of Emotional Distress

■ Terry bases his intentional infliction of emotional distress claim on the fact that he was fired at a time when Jacobs and Kerby knew he was extremely vulnerable due to the death of a long-time friend. Terry alleges the conduct in this case was particularly outrageous given his close personal relationship with Kerby and the fact that Terry was replaced as bindery supervisor by his son, Shawn Terry.

■ In order to recover for intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the defendant intentionally or recklessly caused the plaintiff to suffer severe emotional harm. *Leithead*, 721 P.2d at 1065–66. In *Leithead*, where we adopted the tort, we recognized that there are some wrongful discharge cases in which an action for intentional infliction of emotional distress cannot succeed. *Id.* at 1066. If an employee's mental distress is caused solely by his discharge, and if the discharge was permitted in his contract, then the employer has a complete defense, even if the employer is aware that the discharge will cause emotional distress. *Id.* (citing RESTATEMENT, SECOND, TORTS § 46 cmt. g (1965)); *Wilder*, 868 P.2d at 223.

Because Terry's employment was at will, his contract permitted discharge for any reason or for no reason. Terry does not claim that Pioneer sought to publicly humiliate him or to prevent him from obtaining other employment. *See Wilder*, 868 P.2d at 223–24 and cases cited therein. In fact, Terry's allegations do not demonstrate that Pioneer did anything more than act on its legal rights in a permissible way when it terminated his employment and subsequently filled his position. Consequently, even if Jacobs or Kerby knew Terry was emotionally vulnerable and would suffer emotional distress as a result of his dismissal, Pioneer has a complete defense. The court properly entered summary judgment on Terry's intentional infliction of emotional distress claim.

### CONCLUSION

We find no genuine issue of material fact as to any of Terry's claims; Pioneer was entitled to summary judgment as a matter of law. The district court's Order Granting Defendants' Motion for Summary Judgment is affirmed.