Phil ANDREWS, Appellant (Plaintiff),

v.

**SOUTHWEST WYOMING REHA-
BILITATION CENTER, Ap-
pellee (Defendant).**

No. 97–189.

Supreme Court of Wyoming.

March 15, 1999.

Bernard Q. Phelan, Cheyenne, WY, Representing Appellant.

Gary R. Scott of Hirst & Applegate, Cheyenne, WY, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Phil Andrews (Andrews) filed this wrongful termination action against his former employer, Southwest Wyoming Rehabilitation Center (SWRC), claiming breach of the implied covenant of good faith and fair dealing and breach of an implied contract of employment. Andrews appeals from the summary judgment granted in favor of SWRC. We affirm.

## ISSUES

Appellant Andrews states the issues as:

I. In a wrongful discharge case was summary judgment appropriate where the employee was a corporate officer with fiduciary responsibility and there was evidence the termination was improperly motivated?

II. Was summary judgment appropriate in a wrongful discharge case where personnel rules do not disclaim contractual intent in conformity with Sanchez [v. Life Care Centers, 855 P.2d 1256 (Wyo.1993)] and Lincoln, where the actual practice of the employer is to require cause for termination, and where there are enumerated grounds for termination and a grievance policy in the rules, does inconspicuous "at-will" language apply simply because the terminated employee knew about it?

SWRC, as appellee, states the issues as:

A. Did the Trial Court err in granting summary judgment for Appellee upon the Appellant's claim for breach of the implied covenant of good faith and fair dealing?

B. Did the Trial Court err in granting summary judgment for Appellee upon the

Appellant's claim for breach of an implied contract of employment?

## FACTS

SWRC hired Andrews on January 2, 1990, for the position of employee relations coordinator. In May 1991, he was promoted to vice president of SWRC, the position he held when his employment was terminated on June 21, 1995. Andrews' supervisor was Kathy Horn–Dalton, the president of SWRC. According to Andrews, Horn–Dalton fired him because he tried to inform SWRC's board of directors that she was mishandling corporate assets and causing employee morale problems.

On February 5, 1996, Andrews filed suit against SWRC. Andrews alleged that he had a special fiduciary relationship with SWRC and that his termination was wrongfully motivated, and, thus, SWRC breached the duty of good faith and fair dealing. He also alleged that his termination violated an implied contract of employment established by SWRC's employee handbook, coupled with the corporation's personnel policies and practices. The district court granted SWRC's motion for summary judgment on both claims. Andrews timely appealed the district court's order.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Terry v. Pioneer Press, Inc., 947 P.2d 273, 275 (Wyo.1997). This court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law. Id. We look at the record from a vantage most favorable to the party opposing the motion, allowing that party all reasonable inferences which may be fairly drawn from the record. Id.

## DISCUSSION

### Implied Covenant of Good Faith and Fair Dealing

■ Wyoming recognizes a limited tort claim for breach of the implied covenant of

* Chief Justice at time of expedited case conference; retired November 2, 1998.

good faith and fair dealing in employment contracts. *Springer v. Blue Cross & Blue Shield of Wyoming,* 944 P.2d 1173, 1178 (Wyo.1997); *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 220 (Wyo. 1994). Only in those rare and exceptional cases where a special relationship of trust and reliance exists between the employer and employee is a duty created which can give rise to tort liability. *Springer,* 944 P.2d at 1178. A special relationship sufficient to support a cause of action can be found by the existence of separate consideration, rights created by common law or statute, or rights accruing with longevity of service. *Id.*

■ Andrews contends that a special relationship existed between him and SWRC by virtue of Wyo. Stat. Ann. § 17–19–842 (Michie 1997) of the Wyoming Nonprofit Corporation Act (Act), which provides in pertinent part:

(a) An officer who is an employee of the corporation with discretionary authority shall discharge his duties under that authority:

(i) In good faith;

(ii) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(iii) In a manner the officer reasonably believes to be in the best interests of the corporation and its members, if any.

He argues that, as a corporate officer with a fiduciary duty to the corporation and its members, he was not an "ordinary employee," but occupied a position of trust and reliance. In essence, Andrews' argument is that the "fiduciary relationship" created by the statute amounts to the "special relationship" necessary to support a cause of action for breach of the implied covenant.

We do not agree with Andrews' position. The implied good faith covenant involves a "special element of reliance" by the aggrieved party, the type of trust and dependency that is found, for example, in insurance relationships. *Wilder,* 868 P.2d at 220; *K Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364, 1371 (1987). Section 17–19–842 estab-lishes the standard of conduct for corporate officers, imposing on officers a duty of care to their corporations. *Revised Model Nonprofit Corp. Act* § 8.42 official cmt. (1987). While an officer may be able to rely on the statute to protect him from personal liability if he has acted in accordance therewith, *see* Wyo. Stat. Ann. § 17–19–842(d), it goes too far to say that an officer exercising his duty of care under the statute has a right not to be terminated. On the contrary, the Act provides that a board may remove an officer at any time with or without cause. Wyo. Stat. Ann. § 17–19–843(b) (Michie 1997). Section 843(b) clearly vitiates Andrews' contention that he should be allowed to rely on his employer to maintain his employment until it is determined that he has not acted, or can no longer act, in the corporation's best interest.

In sum, Wyo. Stat. Ann. § 17–19–842 simply does not establish rights on which Andrews was entitled to rely and which would create a special relationship upon which tort liability can rest. Because Andrews did not establish the existence of a special relationship of trust and reliance, the court properly entered summary judgment on Andrews' claim for breach of the implied covenant of good faith and fair dealing.

### *Implied–In–Fact Contract*

■ Andrews contends that the SWRC handbook and personnel policies created an implied-in-fact contract of employment such that he could only be terminated for cause or after progressive disciplinary steps were taken. "In Wyoming, employment for an indefinite time is presumed to be a contract for at-will employment which either party can terminate at any time for any or no reason." *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 275 (Wyo.1997). An employee may overcome the at-will presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status. *Brodie v. General Chemical Corp.,* 934 P.2d 1263, 1265 (Wyo.1997). We examine, under an objective test, whether the employer has intended, either by words or conduct, to include job security or discharge procedures as part of the implied employment contract. *Id.*

at 1265–66. A conspicuous and unambiguous disclaimer, in the employment application or subsequent relevant documents, places an employee on notice that general statements or conduct do not promise employment security and are not to be relied upon by the employee. *Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo.1994).

■ In determining whether SWRC made objective manifestations of assent to an employment contract containing a job security provision and discharge procedures, our analysis must figure in the provisions of the documents issued to Andrews, the effect of disclaimers, and SWRC's course of dealing with its employees. *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1249 (Wyo. 1997). When he was hired, Andrews received an offer letter from Horn–Dalton, which stated that "[i]n accordance with SWRC Personnel Policy, all employment is 'at-will' and for an indefinite period, *i.e.*, SWRC observes no employment contracts." Andrews testified that he received a policy manual when he was hired, although that document is not included in the record on appeal. In addition, he testified that he recalled signing a sheet of paper that was included with the manual indicating that employment was at will. Andrews' testimony, along with the offer letter from Horn–Dalton, demonstrates nothing more than a promise of at-will employment at the time Andrews was hired.

Andrews points to the revised handbook and the actual personnel practices of SWRC as creating an implied-in-fact contract. The summary judgment materials include a revised version of the employee handbook that was issued to employees sometime in 1993. The revised handbook does not contain a progressive discipline procedure or for cause language. Nonetheless, Andrews contends that several provisions in the handbook raise an issue of fact as to whether SWRC employees were at will. Specifically, he directs our attention to the employment categories established therein, a list of twenty-six behaviors that could result in immediate termination, the delineation of a probationary period, and the grievance procedure. He also contends that, in practice, documentation of employee problems over a period of time was required prior to termination.

The handbook contains several disclaimers. A subsection entitled "The Employee Handbook," in the introductory section of the handbook, contains a caveat stating that no one other than the board or president of SWRC has authority to bind the company to a contract of any sort. That subsection also warns employees that historical and current practices may be indicative of what has been typical or what may be expected with respect to wages, hours, terms and conditions of employment, but are subject to change at any time with or without cause. The disclaimer further provides: "Neither this handbook nor other written or oral representations are to be construed as constituting a contract between the company and an employee. The company reserves the right to change, suspend, revoke, terminate, or supersede current policies, practices, procedures or benefits from time to time, with or without cause."

The handbook contains a separate subsection entitled "Employment-at-Will." This subsection expressly provides that employees are employed at the will of the company and that the employer may terminate employment at any time and for any reason. In addition, the subsection clearly expresses that the handbook or other statements shall not be considered to create an express or implied contract unless in writing and signed by the president; that only the president of SWRC is authorized to modify the employment-at-will policy; that employment at will shall not be modified by any verbal or written statements or completion of a probationary period; and that just cause is not required to terminate. The subsection entitled "Employee Conduct" lists examples of prohibited employee behavior which could result in immediate termination, but the list is prefaced with the statement that it is not all-inclusive and does not restrict the company's right to terminate at will. The subsection delineating a probationary period specifies that "[a]n employee may be terminated without cause anytime while on or off probation. The conference of non-probationary status

does not imply that the employee's employment-at-will has changed."

 Andrews acknowledges that the revised handbook contains a disclaimer,[1] but argues that it is invalid because it is not conspicuous. A conspicuous disclaimer maintains the at-will relationship because it puts the employee on notice that general statements or conduct do not promise employment security and are not to be relied upon by the employee. *Lincoln*, 867 P.2d at 703. An employee cannot reasonably rely on the conduct or statements of an employer if he has been sufficiently informed that his employment is at will. *Id.* As a general rule, this court considers the prominence, placement and language of a disclaimer to determine if it is conspicuous and unambiguous as a matter of law. *Id.* However, whether the disclaimers in SWRC's handbook were placed on the first page, or were bold or highlighted to draw an employee's attention, is irrelevant under the facts of this case. Andrews testified during his deposition that he was the primary author of the revised handbook. Therefore, he had actual knowledge of the at-will provisions in the handbook. Those provisions, outlined above, are unambiguous and plainly demonstrate SWRC's intent to maintain the at-will status of its employees. Accordingly, Andrews could not reasonably believe that the handbook promised job security. Nor could he reasonably rely on SWRC's practice of following progressive discipline prior to termination as a promise that similar procedures would be followed in his case.

Andrews failed to rebut the presumption that his employment was at will. Therefore, the court properly entered summary judgment on his claim for breach of an implied-in-fact contract.

## CONCLUSION

Andrews' summary judgment materials do not raise a genuine issue of material fact as to either of his claims. SWRC was entitled to summary judgment as a matter of law, and the district court's order hereby is affirmed.

---

1. Andrews refers only to the disclaimer in the "Employment–at–Will" subsection, ignoring other language found throughout the handbook disclaiming the intent to form a contract.