**Virginia BROWN, Plaintiff,**

v.

**HOLY NAME CHURCH, A Wyoming Nonprofit Corporation, Defendant.**

No. 99–CV–096–J.

United States District Court,
D. Wyoming.

Jan. 20, 2000.

Micheal K. Shoumaker, Broomfield, CO, for Virginia Brown, plaintiff.

Paul J. Hickey, John Matthew Walker, Hickey Mackey Evans & Walker, Cheyenne, for Holy Name Church, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

The defendant's "Motion for Summary Judgment" and the plaintiff's opposition thereto came before the Court for consideration, upon the parties' written submissions. The Court, having considered the parties' written submissions and the materials offered in support of their respective positions, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

### Background

This case is brought by plaintiff asserting claims against the defendant pursuant to the federal Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) ("ADA") and the Age Discrimination in Employment Act (42 U.S.C. § 2000e–5(e) "(ADEA")). She asserts that defendant failed to reasonably accommodate her by denying her employment because of her disability and claims that the defendant discriminated against her on the basis of age. The defendant has denied plaintiff's allegations.

Plaintiff is presently 52 years old, with her date of birth at April 14, 1947. She resides in Sheridan, Wyoming and became a teacher at Holy Name Catholic School in 1982. Holy Name Catholic School is a private, parochial school with the local pastor as superintendent of the school and a local seven member school board. Plaintiff was employed as a fourth grade teacher under a series of annual contracts beginning in 1982 and ending in 1997, when she was not offered a teaching contract for the following school year. In her complaint, plaintiff claims that she was terminated by the defendant from her employment as a teacher on May 27, 1997, without just cause. She alleges that she requested a hearing with the school board, but that request was denied.

When plaintiff was 11 years old, the ball joint in her hip was broken. She had her first hip replacement surgery in 1959. This was replaced with a new hip in 1974, and was replaced again in 1982. She underwent a fourth hip replacement surgery in 1994, while employed by defendant. In 1996, plaintiff fell and cracked the bone around the prosthesis, but no surgery was required. She was placed on crutches for a period of time to allow healing to occur. It is likely she will require further hip surgeries in the future. In 1997, plaintiff was ill and hospitalized for a strep infection which had settled in her leg. She also received treatment for a blood clot at that time. She did not return to her teaching duties at Holy Name until the middle of March. Brown Deposition Page 60–61.

Plaintiff is able to do most routine daily activities such as shopping, working, laundry, driving, house cleaning and cooking. She enjoys camping and limited hiking, but is not able to do certain sports such as skating, skiing, or anything where she is afraid she might fall. Brown Deposition 58–59, 62–63. Plaintiff also indicates that she has been able to perform all of her duties as a teacher and that she does not consider herself to be unable to do so because of her hip replacement. She has operated her classroom, monitored the playground at lunch and recess and has taught physical education for the defendant at certain times.

Plaintiff was hired by the defendant in 1982. Through a series of annual contracts she was hired on a year to year basis through 1997. The defendant determined that it would not enter into a new employment contract with plaintiff for the 1997–1998 school year, based upon the recommendation of the school principal, Gilbert Sanchez. The affidavit of Sanchez

indicates that it was his responsibility to make recommendations to the school board and superintendent regarding which teachers he believed should be hired for the coming school year. Those recommendations could be accepted or rejected by the board; the board made its recommendations to the superintendent, Father Sullivan, who was the final decision maker. Sanchez states that in the spring of 1997, he decided to recommend to the school board and Father Sullivan that the school not enter into another employment agreement with plaintiff. His decision was based upon his education and experience, and his opinion that plaintiff consistently demonstrated poor classroom management and instructional skills. Among other things, Sanchez opined that plaintiff maintained poor discipline in the classroom, allowed students to make disruptive noise and that the noise coming from her classroom was not acceptable or appropriate for a fourth grade classroom.

He states that plaintiff ignored the disruptive behavior of the students and would raise her voice in an effort to be heard over talking and other noise, which in turn created more noise. Sanchez states that upon reviewing plaintiff's personnel file, he noted she had been counseled by his predecessor about these same problems. Sanchez states that he observed plaintiff and that he discussed his concerns with her over the two year period of time he was supervising her. He did not observe satisfactory improvements. Sanchez also states that during the 1996–1997 school year, he was contacted by parents of third graders who told him that their children would not · attend Holy Name School if plaintiff continued to be the fourth grade teacher. Sanchez states that he believed plaintiff was one of the poorest teachers he had ever observed. Sanchez was aware that plaintiff had had a hip replacement and that she walked with a limp. He states that he never observed or believed that Browns' physical condition prevented her from carrying out her job responsibilities at the school.

With respect to plaintiff's hospitalization in 1997, Sanchez's affidavit states in paragraph 16:

Virginia Brown did suffer an acute condition concerning an infection in her leg and ankle, which required hospitalization, around February of 1997. Virginia Brown had to use crutches for a period of time after she was released from the hospital and I recall discussing with Virginia Brown the possibility of moving her classroom from the second floor of the building to the first floor of the building for her convenience during this time. At no time did I take Virginia Brown's physical condition into consideration when I made my decision and recommendation that the Holy Name School not enter into a contract with her for the 1997–98 school year. I believed that her problems as a teacher had absolutely nothing to do with her hip replacement.

Plaintiff also stated, in her deposition, that she discussed some of the accommodations she thought she might require upon her return to school with Mr. Sanchez while she was in the hospital. The accommodations included a need to limit her time on stairs, the possibility in the future of moving her classroom to the first floor, help with lifting and carrying, and limited playground duty. Brown Deposition at 64–66. She stated, however, that she never discussed specifically her needs and that she never asked for limited or reduced playground duty, because other teachers offered to do it for her. Plaintiff testified that she did not believe her disability prevented her from being a good teacher because she can perform the duties of a teacher, which is "instructing children, caring." Brown Deposition at 68.

Plaintiff also stated in her deposition with respect to her age discrimination allegations:

Q. You have also alleged in your Complaint that the Holy Name School has discriminated against you because of your age; is that correct?

A. Yes.

Q. Please describe for me all of the facts that you rely upon in making that allegation.

A. I am over 50. I had been at Holy Name for 13 years, which makes me—I was becoming expensive.

Q. Why do you say that?

A. I was fairly—almost at the top of the pay scale, and also with the benefits—they were going to a new retirement system, which was based on a certain percentage of—they would match a percentage of your income, which was 4 percent. They had been matching 3 percent, and now it was going to 4 percent. But since I had been in the system using the retirement system for a long time, I would have got even 6 percent.

I feel, also, because of my—the surgeries and hospitalization that insurance-wise I was getting expensive.

Q. But you would agree with me that the insurance and surgery costs would not relate to your age?

A. Well, as I get older, I'm sure that my insurance is going to be more expensive—I'm—there is a possibility that I will need more surgeries.

Deposition at 69–70.

Plaintiff's affidavit filed in support of her opposition to the defendant's motion for summary judgment also states that she was replaced by Brenda Jerrall, a younger woman approximately 35 years old, who was healthier and near the bottom of the pay scale for teachers at Holy Name School, unlike plaintiff who asserts she was at the top of the pay scale. Ms. Jerrall had been the director of the pre-school for about one year before she replaced plaintiff as the fourth grade teacher.

The defendant now seeks summary judgment in its favor on all of the claims asserted by plaintiff against it, including the ADA, ADEA, breach of contract claims, as well as a claim for breach of the covenant of good faith and fair dealing. The plaintiff opposes the motion.

## Standard of Review Fed.R.Civ.P. 56

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Allen v. Muskogee, Oklahoma,* 119 F.3d 837, 839–840 (10th Cir. 1997). A disputed fact is material if it might affect the outcome of the suit under governing law. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The factual record and reasonable inferences therefrom are construed in the light most favorable to the nonmovant. *Id.,* quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Gullickson v. Southwest Airlines Pilots' Assoc.,* 87 F.3d 1176, 1183 (10th Cir.1996). The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment, but instead bears the initial burden of showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Id.,* quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265.

### Discussion

*1. ADA Claim*

The Tenth Circuit has discussed the ADA in numerous recent cases. In *Morgan v. Hilti,* 108 F.3d 1319, 1322 (10th Cir.1997), the circuit court noted that the "analytical framework first pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) guides our review of plaintiff's claims." *Morgan v. Hilti,* 108 F.3d at 1322. The court noted that the *McDonnell Douglas* burden-shifting analysis is appropriate in disability discrimination cases where the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability for an employment decision. *Id.* at n. 3. Where an employer admits that a disability played a prominent part in the

employment decision or an employee has other direct evidence of discrimination based on disability, the burden-shifting framework may be unnecessary and inappropriate. *Id.*

■ The ADA, at 42 U.S.C. § 12112(a), prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharges of employees ... and other terms conditions, and privileges of employment." In order to establish a prima facie case under the ADA, a plaintiff must demonstrate: (1) that she [or he] is a disabled person within the meaning of the ADA, *see MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1443 (10th Cir.1996); (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation, *see id.*, and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability, *see White v. York Int'l Corp.*, 45 F.3d 357, 361 n. 6 (10th Cir. 1995).

The final prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision. *See Ennis v. National Ass'n of Business and Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995). This burden is " 'not onerous,' " *id.*, (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)), but it is also "not empty or perfunctory," *Ennis*, 53 F.3d at 59. The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law. *Id.*

*Morgan v. Hilti*, 108 F.3d at 1323–1324.

■ After a plaintiff establishes a prima facie case, the burden will shift to the employer to offer a legitimate nondiscriminatory reason for its employment decision.

*Id.* at 1323, citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* Demonstrating pretext gets plaintiff "over the hurdle of summary judgment." *Id.* at 452 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 n. 3 (10th Cir.1994)).

Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.' " *Olson v. General Elec. Astrospace*, 101 F.3d 947, 952–52 (3d Cir.1996) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) (further citation omitted)). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

*Morgan v. Hilti*, 108 F.3d at 1323.

■ The defendant has argued that plaintiff is not disabled under the ADA, an argument that has merit in this case. The Court agrees with defendant's contention in this regard, and finds that the plaintiff is not disabled within the meaning of the ADA. The United States Supreme Court has stated that the determination of disability should be an individualized inquiry, with consideration of the positive and negative effects of mitigating measures. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2142, 144 L.Ed.2d 450 (1999). The defendant concedes that without the advances and benefits of modern

medical technology (including hip replacement surgery), there is a possibility that plaintiff's medical condition could substantially limit some of her major life activities. However, because plaintiff has been able to remediate her condition to a greater or lesser extent through her hip surgeries, this mitigating measure should be considered, according to defendant's arguments. Further, defendant notes that plaintiff is unable to identify any major life activity, outside of the work environment, in which she is substantially limited or cannot participate because of her medical condition. Defendant contends that the determination of plaintiff's medical condition and whether it qualifies as a disability under the ADA is not based simply on the medical condition itself, but the overall impact that the condition has upon her major life activities. Plaintiff has stated that her disability does not prevent her from being a good teacher and that she can perform the duties of a teacher. Consequently, defendant asserts it is unreasonable for her now to argue she is disabled or been regarded by her employer as disabled under the ADA.

The ADA prohibits discrimination by covered employers against qualified individuals with a disability. 42 U.S.C. § 12112(a) provides that covered employers "shall [not] discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Sutton*, 119 S.Ct. at 2144. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.*, citing § 12111(8). A disability is defined as:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;"

"(B) a record of such an impairment;" or

"(C) being regarded as having such an impairment."

*Id.*, citing § 12102(2).

■ EEOC regulations provide definitions:

After restating the definition of disability given in the statute, see 29 CFR § 1630.2(g) (1998), the EEOC regulations define the three elements of disability: (1) "physical or mental impairment," (2) "substantially limits," and (3) "major life activities." See id., at §§ 1630.2(h)-(j). Under the regulations, a "physical impairment" includes "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." § 1630.2(h)(1). The term "substantially limits" means, among other things, "[u]nable to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." § 1630.2(j) Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." § 1630.2(i).

*Id.* at 2145. The Supreme Court then went on to find that an individualized inquiry is required to determine whether one has a disability.

Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when

judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act. *Id.* at 2146. One is to look at the effect of the impairment on the life of the individual or, stated differently, how a corrected or mitigated impairment affects the individual's actual condition. *Id.* at 2147. This is consistent with an "understanding that those whose impairments are largely corrected by medication or other devices are not 'disabled' within the meaning of the ADA." *Id.* at 2148. One may have a disability under subsection A of the Act if, "notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity." *Id.* at 2149. See also *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

Notwithstanding plaintiff's claims that she is in constant pain, which she treats by taking large amounts of ibuprofen and that she generally sleeps sitting in a chair, the Court concludes that plaintiff is not disabled within the meaning of the ADA. Plaintiff's own testimony belies her claims in that it demonstrates plaintiff is not substantially limited in any of her major life activities and that it has not prevented her from pursuing her occupation as a teacher. Plaintiff's impairment must do more than "threaten major life activities of walking, standing, and lifting," as plaintiff has argued in her brief. Furthermore, other than a mere awareness of plaintiff's hip problems and her various surgeries by the defendant, there is nothing in the record to indicate that the defendant regarded plaintiff as having an impairment. The Court finds that plaintiff is not disabled within the meaning of the ADA.

■ ·However, assuming for purposes of summary judgment only that plaintiff has established she is disabled within the meaning of the ADA, the Court will proceed to consider the plaintiff's remaining arguments and, as the court did in *Morgan v. Hilti,* this Court will assume that plaintiff has demonstrated a genuine issue of fact as to each aspect of the prima facie case she has attempted to describe above. Therefore, under this analysis, the burden has shifted to the defendant school to offer a legitimate reason for the plaintiff's termination of employment in this case. The defendant has argued that plaintiff's teaching contract was not renewed for the upcoming school year due to inadequate classroom management and instructional skills. The reasons for the decision not to offer plaintiff a new contract were performance related.

The Court finds that the employer school has justified its actions by stating that its decision not to enter into a new teaching contract for the 1997–1998 school year was due to plaintiff's poor teaching skills. The defendant school's explanation is sufficient to carry its burden. Thus, the burden shifts back to the plaintiff to establish that there is a genuine dispute as to whether the defendant school's actions were a pretext for discrimination on the basis of disability. Plaintiff has failed to carry this burden.

The affidavit of plaintiff's direct supervisor, Gilbert Sanchez, indicates that Sanchez did not observe improvement in plaintiff's teaching skills over the two year period in which he supervised plaintiff, although he had communicated his concerns to plaintiff. He also stated that he believed plaintiff's teaching skills were deteriorating during the two year period that Sanchez was principal of the school. Sanchez states that he believed other teachers could do a better job of teaching the fourth graders at Holy Name School. Nothing in Sanchez's affidavit suggests that the plaintiff's problems with her hip led to the decision not to enter into another teaching contract or that her disability played any role in the defendant's employment decisions.

Except for plaintiff's suggestion that Gilbert Sanchez has lied, the evidence in the record before the Court does not suggest that defendant decided not to enter into a new teaching contract for the 1997–1998 school year for anything other than

legitimate reasons. Plaintiff has failed to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the reasons offered by defendant for its actions that a reasonable factfinder would find unworthy of credence. Plaintiff's submissions require great conjecture in order to reach the conclusion that the defendant's explanations are a pretext for intentional discrimination against plaintiff on the basis of her claimed disability.

Notwithstanding the plaintiff's claims of unfair treatment, the defendant's decision not to offer plaintiff a teaching contract for the following school year, where there is no evidence in the record to suggest that the employer's proffered explanation is pretextual, is a business decision that should not be second guessed by this Court. Even if the employer's business decisions are erroneous or illogical, the ADA, like other Congressional legislation designed to protect certain specified groups of workers, is not a vehicle for reviewing the propriety of business decisions. *Ellis v. United Airlines, Inc.*, 73 F.3d at 1006 (10th Cir.1996), quoting *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 (10th Cir.1993).[1] The Court finds that plaintiff has failed to carry the burden of showing that the defendant's employment decision was made because of her disability. Plaintiff has failed to show that the reasons offered by the employer school were pretextual, or unworthy of credence.

To rebut this evidence evaluating her job performance and job deficiencies, plaintiff offers her own subjective beliefs and suggests that certain factors make the defendant's explanations unworthy of belief and would lead to an inference of age discrimination. Factors she suggests, among other things, include the fact that she had been rehired for twelve years and a claim that Gilbert Sanchez lied about giving her a contract for 1997 and telling

her that her contract would not be renewed, that Sanchez did not evaluate her until after he had made the decision not to renew the contract and only did another evaluation in May of 1997 to cover his own actions. She also contends that Sanchez made his decision not to renew her contract only after she had been away from her teaching duties due to the illness related to the strep infection in her leg.

 However, the affidavit and deposition of Sanchez indicates that he believed that plaintiff's contract should not be renewed early in the 1997 school year. No evidence suggests that Sanchez's decision was in any manner related to plaintiff's disability. The affidavit and deposition of Father Sullivan indicated that it was the recommendation of the principal that was most important in making decisions regarding the hiring, contract renewals or firings for teachers at Holy Name School. Father Sullivan in turn would recommend actions to the Board, which is what occurred in this case. It is apparent that plaintiff disagrees vehemently with Sanchez's assessments of her abilities as a teacher and that she believes he contrived evidence to support his recommendation. However, it is not plaintiff's assessment of her abilities as a teacher that is important. The opinions that matter are those of the employer and the decision maker. *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 988 (10th Cir.1996)(ADEA case); *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 747 (10th Cir.1991); *Branson v. Price River Coal. Co.*, 853 F.2d 768, 772 (10th Cir.1988). Further, the employer's articulated legitimate business reason does not become pretextual even if it turns out to be, in hindsight, an exercise of bad business judgment. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.1998). The test is the employer's good faith belief. *Id.* at 1129. The Court finds that plaintiff's offered evidence in this regard

---

**1.** In the Tenth Circuit, ADEA cases are analyzed in the same manner as ADA cases, utilizing the three-stage analysis of *McDonnell Douglas* to prove discrimination when no di-

rect evidence of age discrimination exists. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir.1994).

fails to rebut the defendant's legitimate business justification for its employment decision regarding her employment by Holy Name School and that the evidence offered by plaintiff does not serve to suggest that her employer's proffered reasons for its employment decisions were pretextual or unworthy of credence. The Court finds that defendant is entitled to summary judgment in its favor on plaintiff's ADA claim.

## 2. ADEA Claim

A similar result obtains with respect to plaintiff's age discrimination claim. Under the ADEA, the burden shifting scheme of *McDonnell Douglas,* as discussed above, is also employed. Here, however, there is no credible evidence at all in the record that suggests that the defendant school's employment decisions with respect to plaintiff had anything to do with age whatsoever.

The Tenth Circuit has reaffirmed its use of the *McDonnell Douglas* scheme for analyzing ADEA claims when no direct evidence of discrimination exists.

At the first stage, the plaintiff must prove a prima facie case of discrimination, i.e., that (1) he is "within the protected age group;" (2) he "was doing satisfactory work," (3) he "was discharged;" and (4) his position was filled by a younger person. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528–30 (10th Cir.1994). In the second stage, the defendant must carry the burden to provide a legitimate nondiscriminatory reason for plaintiff's termination. *Id.* If defendant articulates a legitimate, nondiscriminatory reason for its action, the burden of production shifts back to the plaintiff, who as plaintiff must also carry the burden of persuasion. In the third stage, plaintiff must show that age was a determinative factor in defendant's employment decision, or show that the defendant's explanation was merely a pretext. *Id.; Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1425 (10th Cir.1993).

*McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998).

Further:

Pretext in cases such as this may be established by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Where as here plaintiff seeks to demonstrate that the employer's explanation is merely a pretext, this court "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *Reynolds v. School District No. 1 Denver,* 69 F.3d 1523, 1535 (10th Cir.1995). Summary judgment is not ordinarily appropriate for settling issues of intent or motivation.... However, in this case, McKnight has not shown that at the time of his termination there was any dispute or a genuine issue concerning the sincerity of defendants' proffered reason for his termination. In this case the totality of McKnight's proffered evidence is insufficient to raise a genuine doubt about KCC's motivation at the time of termination. An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. *Reynolds,* 69 F.3d at 1535. The test is good faith belief. *Id.* In this regard, if KCC believed Patton's allegations and terminated McKnight for that reason, such belief would not be pretextual even if the belief was later found to be erroneous. Based upon the foregoing, this court finds no evidence in this record that KCC's stated reason at the time of termination of McKnight was pretextual.

*McKnight v. Kimberly Clark Corp.,* 149 F.3d at 1129 (some citations omitted). See also *Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159 (10th Cir.1998) (reduction in force case; also involves claims of racial and gender discrimination in violation of Title VII—all to be assessed under the same *McDonnell Douglas* order of proof); *Baucom v. Amtech Systems Corp.,* 131 F.3d 151 (Table), Unpublished Disposition, Text at 1997 WL 748668 (10th Cir.1997).

■ In this case, the Court finds that there is no evidence of ageist discrimination whatsoever to sustain plaintiff's claims in this regard. Plaintiff's argument that she was becoming more expensive to the school as a consequence of her longevity there as a teacher do not satisfy her burden. See generally, *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–11, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993); *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 763 (8th Cir.1995); *Hanebrink v. Brown Shoe Co.,* 110 F.3d 644 (8th Cir. 1997); *Guinan v. Roman Catholic Archdiocese of Indianapolis,* 50 F.Supp.2d 845, 854 (S.D.Ind. 1999). The plaintiff's self-serving conjecture and speculation do not serve to demonstrate that the employer's proffered reasons for the challenged actions are pretextual and unworthy of belief. There is no meaningful evidence, direct and indirect, of discrimination against plaintiff by defendant on the basis of age. Accordingly, the Court finds the plaintiff has failed to sustain her ADEA claim and the defendant is entitled to summary judgment in its favor on the ADEA claim.

*3. Breach of Contract*

■ The Court finds that plaintiff was an at-will employee and that she could be terminated at any time with or without cause. The contract governing plaintiff's employment with Holy Name School for the 1996–1997 school year clearly provides that plaintiff is an at-will employee of the school. Paragraph 7 of the contract provides:

7. *Effect of Contract.* This Contract will terminate upon the expiration date set forth above. There has been no representation or any other act on behalf of the School to imply or give the Teacher an expectation that this Contract will be renewed. The Teacher understands that this Contract can only be renewed by an affirmative act of the School Board of the School and no other employee of the School, including the Superintendent or Principal, or any other Board member acting as an individual, has authority to bind the Board. Both parties agree that it is the intention of the Board that no written or unwritten policy or rule of the Board shall give the Teacher an expectation for renewal of this Contract. The Board has the right and may elect not to renew this Contract without cause, in which event the Board will not be obligated to state any reason therefor nor give the Teacher a hearing regarding the decision not to re-employ the Teacher. This Contract shall be final and complete as of the expiration date set forth above.

The Contract further provides, commencing at paragraph 11:

11. The Teacher hereby represents that he/she has reviewed the terms of this Contract and all the policies of the School, understands the provisions thereof, and agrees to comply with the terms of this Contract and the terms of the School's Policies and Rules and Regulations, and to perform such duties and services as may lawfully be required of the Teacher.

12. *Acceptance.* In the event that the Teacher does not sign and return this Contract on or before the 15th day of May, 1996, the School may consider the same void and of no effect. If the Teacher returns this Contract by mail, the date of the U.S. Postmark on the envelope containing same shall be the date of delivery to the District, so long as postage is prepaid thereon.

Section A of the defendant's Policy Manual, at Section 2113, provides:

*Teacher Contracts*

The term of teacher contracts are ordinarily on a yearly basis. Each year, each teacher whom the School Board determines to retain will be offered a contract for the next school year. Such contracts must be offered to such teachers by April 15, and the teacher offered a contract must return the contract, properly signed by May 15, the School Board may elect to withdraw its offer of employment to the teacher.

The principal shall make all recommendations to the School Board regarding whether to offer any teacher a contract of employment for the next school year. The Board shall take this recommendation into consideration when rendering a final decision concerning the offering of such contracts.

The School Board does not intend to represent in any manner by this policy that a contract will be offered to any teacher at the end of a school year. Further, it is the intention of this policy that the teacher is employed at the will of the School, and the teacher can therefore be terminated at any time at the will of the School. The School Board has the right to dismiss, suspend or terminate a teacher at any time (or choose not to offer a contract to a teacher for the next year) for any reason in which event the Board will not be obligated to state any reason therefore nor give the teacher a hearing regarding the decision.

A teacher may resign his/her position, effective at the end of the school year, by giving written notice on or before May 15 of that year to the principal, of his/her desire not to be employed by the School for the following year.

Exhibit C attached to defendant's Brief in Support of Motion for Summary Judgment.

 In Wyoming, the courts follow a common law rule of employment at-will. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 217 (Wyo.1994); *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985). An at-will employment relationship which is of indefinite duration may be terminated by either party, at any time, for any reason or no reason at all, without breaching the contract of employment. *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d 1246, 1249 (Wyo.1997); *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 703 (Wyo.1994). An employment relationship may arise by an express contract or an implied in fact contract. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994). The express contract may or may not alter the at-will employment relationship. See *Boone v. Frontier Refining, Inc.,* 987 P.2d 681, 685 (Wyo. 1999); *Anderson v. South Lincoln Special Cemetery District,* 972 P.2d 136 (Wyo. 1999); *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo. 1994). It is for the Court to determine as a matter of law whether a written contract of employment is ambiguous. *Id.*

> This court first looks at whether the contract is clear and unambiguous, and if it is, we confine our review to the four corners of the document to determine the parties' intent.... A contract is ambiguous if the agreement is obscure in its meaning because of indefiniteness of expression or because a double meaning is present.... In making such determination, this court considers the contract as a whole and reads each provision in light of all the others to find the plain meaning of the words.... This court will not consider extrinsic evidence to contradict the plain meaning of an unambiguous contract, and the intent of the parties, as stated in their agreement, must be given effect...

*Mathis v. Wendling,* 962 P.2d 160, 163–164 (Wyo.1998) (citations omitted).

Here, the written contract for the 1996–1997 school year is not ambiguous. The contract contains no objective manifestations of assent to an employment contract containing job security provisions; the contract expressly provides for-at-will employment. See *Bear v. Volunteers of America, Wyoming, Inc.,* 964 P.2d 1245,

1250 (Wyo.1998). Plaintiff could not have any expectation of employment beyond June 4, 1997, the date that contract terminated, and she could not have had any expectation of anything other than at-will employment under the express terms of that contract. Where a contract is not ambiguous, review should be limited to the four corners of the document and the contract should be enforced as written.

■ The Court has also considered plaintiff's arguments regarding the propriety of the School Board's decision to withdraw its offer of employment for the 1997–1998 coming academic year. Her argument is not persuasive. Plaintiff's Exhibit 6 includes excerpts from the prospective 1997–1998 "Teacher's Employment Contract." The contracts were sent to all teachers at Holy Name School in April of 1997 and teachers who wished to accept the offer were to return them to the school by May 15, 1997. Plaintiff signed the contract and states that she returned the contract to the school in a timely fashion. The exhibit is not signed on behalf of Holy Name School. It was only after the contracts were sent out that plaintiff learned she would not be hired for the following school year. The School Board Policy 2113, set out above in its entirety, provides that the Board may elect to withdraw an offer of employment to the teacher and provides further that teachers employed by the School are at-will employees who could be terminated at any time at the will of the School. Plaintiff had no contractual relationship with the School for the 1997–1998 school year; if she did somehow enter into such a relationship with the School, it is clear that she was an at-will employee who could have had no expectations of job security as a teacher with the School in this case. There is nowhere any promise of job security by defendant to plaintiff. The Court finds that the defendant is entitled to summary judgment on the plaintiff's breach of contract claims for the reason that there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law.

*4. Breach of the Covenant of Good Faith and Fair Dealing*

■ Finally, this Court will consider the plaintiff's contention that defendant breached the implied covenant of good faith and fair dealing. Under this cause of action, a plaintiff may seek to recover damages for tortious conduct arising out of an employment relationship. *Loghry v. Unicover Corp.,* 927 P.2d 706, 712.

> All contracts of employment contain an implied covenant of good faith and fair dealing.... As noted earlier, Wyoming recognizes a limited tort claim for breach of an implied covenant of good faith and fair dealing in employment contracts.... When a special relationship of trust and reliance is demonstrated to exist between the employee and the employer, a breach of the duty of good faith and fair dealing is actionable.... Only in rare and exceptional cases will a duty be created giving rise to tort liability.... Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service.

*Loghry v. Unicover Corp.,* 927 P.2d at 712 (citations omitted). *See also Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642 (Wyo.1996); *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211 (Wyo. 1994).

The Wyoming Court discussed the "special relationship" requirement in *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642 (Wyo.1996). There, the Wyoming Court, after again noting that actions upon the implied covenant of good faith and fair dealing are limited to rare and exceptional cases, stated:

> The implied covenant of good faith and fair dealing may, upon demonstration of a special relationship, serve to redress the inherent imbalance between corporations and individual employees....
>
> Usually, the special relationship giving employees an action on the implied covenant of good faith and fair dealing stems from a long term employment relation-

ship coupled with a discharge calculated to avoid employer responsibilities to the employee, e.g., benefits or commissions.... The duration of an employment relationship over a period of years is not sufficient, alone, to give rise to a special relationship....

*Garcia v. UniWyo Federal Credit Union,* 920 P.2d at 646 (citations omitted).

■ Here, plaintiff has argued that the circumstances of this case are such that the Court should find the covenant of good faith and fair dealing applies. This Court disagrees. At best, this case is more fairly characterized as a contract dispute. No a special relationship exists here that would support a valid good faith/fair dealing claim. Plaintiff has failed to prove the special relationship of trust and reliance outlined in the Wyoming cases discussing the implied covenant of good faith and fair dealing in the employment context. There are no rights that accrue with longevity of service or other special benefits necessary to support such a claim. There are no rare and exceptional circumstances that give rise to the type of "special relationship of trust and confidence" as is contemplated by the Wyoming cases. There is no evidence to suggest an improper motive, egregious conduct or overreaching on the part of the employer so as to characterize the decision not to offer plaintiff a contract for the 1997–1998 school year as an act of bad faith. Thus, plaintiff's claim for breach of implied covenant of good faith and fair dealing must fail. See e.g., *Andrews v. Southwest Wyoming Rehabilitation Center,* 974 P.2d 948 (Wyo.1999); *Terry v. Pioneer Press, Inc.,* 947 P.2d 273 (Wyo.1997). Defendant is entitled to summary judgment in its favor on the breach of the covenant of good faith and fair dealing claim as well.

### Conclusion

The defendant's motion for summary judgment with respect to all of plaintiff's federal and state law claims, including the ADA, ADEA, breach of employment contract and breach of the covenant of good faith and fair dealing, will be granted for the reason that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. For the foregoing reasons, it is therefore

**ORDERED** that the defendant's Motion for Summary Judgment shall be, and is, **GRANTED.**

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

### JUDGMENT

The Court having entered its Order Granting Defendant's "Motion for Summary Judgment" for the reasons that there are no genuine issues of material fact and defendant is entitled to judgment in its favor as a matter of law, it is therefore

**ORDERED, ADJUDGED AND DECREED** that plaintiff Virginia Brown recover nothing of defendant Holy Name Church, A Wyoming Nonprofit Corporation, and that defendant recover of the plaintiff its costs of action, with all of the parties to bear their own attorneys' fees.